**Joseph LAMAR, Petitioner-Appellant,**

v.

**Fred BANKS, Warden, Gwinnett County Correctional Institute, Respondent-Appellee.**

**No. 81–7347.**

United States Court of Appeals, Eleventh Circuit.

Aug. 26, 1982.

J. M. Raffauf, Decatur, Ga., for petitioner-appellant.

Bryant Huff, Dist. Atty., Michael C. Clark, Asst. Dist. Atty., Lawrenceville, Ga., for respondent-appellee.

Before FAY, VANCE and ARNOLD\*, Circuit Judges.

ARNOLD, Circuit Judge:

Petitioner Joseph Lamar appeals the denial by the District Court of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He alleges, among other things, that the Georgia "fighting words" statute under which he was charged and convicted, Ga.Code § 26–2610(a), is unconstitutional both on its face and as applied to the petitioner. We hold that the statute is not invalid on its face, but reverse and remand for an evidentiary hearing on Lamar's contention that the statute is unconstitutional as applied to his case.

I.

On the morning of October 1, 1979, petitioner, a taxicab driver, picked up a passenger at the Atlanta airport. The passenger, a female college student, asked to be taken to Agnes Scott College in Decatur, Georgia.[1] Instead of taking the young woman to her requested destination, petitioner drove to an area of the city unfamiliar to his passenger and tried to seduce her. During the course of propositioning the young woman, petitioner made the statement to her that "I bet your honey doesn't have the nine and one-half inch penis I have."[2] He also held the woman's hand and insisted

---

\* The Honorable Richard S. Arnold, U. S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Our statement of the facts is based largely on the briefs, and we have attempted to limit it to those facts on which both sides agree. As we will explain below, no record of the trial exists, and neither the state nor the federal post-conviction courts granted Lamar the evidentiary hearing he requested.

2. It was stipulated that there was evidence at trial that petitioner did speak these words to his passenger. R. 192 (Transcript of State Post-Conviction Hearing, p. 17).

that she give him her address and telephone number. The student was able to persuade petitioner to release her by giving a fictitious address as her residence at Agnes Scott College.

As a result of making the comment quoted above to the young woman, petitioner was charged with violating Ga.Code § 26–2610(a), a misdemeanor.[3] He was convicted on January 29, 1980, after a non-jury trial in the State Court of DeKalb County, Georgia, and sentenced to the maximum of one year in prison. The testimony at the trial was neither taken down nor transcribed.[4] Petitioner was represented by counsel at his trial.

Petitioner then filed a petition for habeas corpus in the Superior Court of Gwinnett County, Georgia, the court having jurisdiction over the person of respondent, his custodian.[5] Lamar claimed that his conviction was invalid for essentially the same reasons as he now urges in support of his petition for federal habeas corpus. Counsel attempted to present testimony "to show . . . what context is the words that are charged

in the . . . accusation, and in what context the words were used," R. 190, but the State objected "to re-trying the case at this time," *ibid.*, and the objection was sustained. R. 191. The state habeas hearing consisted largely of argument of counsel, and promptly after the hearing the Superior Court denied the petition on its merits in a written opinion. *Lamar v. Banks*, Civil Action No. 80–A–681 (Super.Ct. Gwinnett County, Ga., May 2, 1980). Application for a certificate of probable cause to appeal was denied by the Supreme Court of Georgia without opinion, Hill, J., dissenting. *Lamar v. Banks*, App. No. 1258 (Ga. July 16, 1980). There is thus no question that state remedies have been fully exhausted.

Petitioner filed this federal habeas petition on May 7, 1980, and the case was referred to a magistrate for consideration. His motion for release on bond pending consideration of his petition was granted by the District Court.[6] Petitioner requested an evidentiary hearing, but none was held. On March 19, 1981, the magistrate issued his report, recommending that petitioner be

---

3. Georgia Code § 26–2610 provides:
   26–2610 Abusive or obscene language
   A person who commits any of the following acts is guilty of a misdemeanor:
   (a) Without provocation, uses to or of another, in his presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace; that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in his presence, naturally tend to provoke violent resentment, that is, words commonly called fighting words.
   (b) Without provocation, uses obscene and vulgar or profane language in the presence of a female or of a male under the age of 14 years, or by telephone to a female or to a male under the age of 14 years; or
   (c) Communicates to any female within this State by writing or printing any obscene or vulgar language or improper proposals; or
   (d) Engages in indecent or disorderly conduct in the presence of a female in any public place; or
   (e) Telephones another repeatedly, whether or not conversation ensues, for the purpose of annoying, harassing or molesting another or his family, or uses over the telephone language threatening bodily harm, or telephones and intentionally fails to hang up or disengage the connection, or knowingly

permits any telephone under his control to be used for any purpose prohibited by this subsection.

4. The State Court of DeKalb County is a court of record below the level of the Superior Court, which is the state trial court of general jurisdiction. It has concurrent jurisdiction to try misdemeanor cases. Ga.Code § 24–2101a. "Court-reporting personnel shall be made available for the reporting of civil and criminal trials in [State] courts . . . ," Ga.Code § 24–2105a(a), but "[r]eporting of any trial may be waived by consent of parties," § 24–2105a(b). We do not know why no record was made of the testimony at petitioner's trial in this case. Perhaps, as the statute indicates, reporting of the trial was waived. We do not understand the State to contend that our review of this conviction is barred or limited by reason of any waiver of reporting by counsel for petitioner.

5. Petitioner did not file a direct appeal of his conviction. It is not contended that this omission is a state-law procedural default that limits our jurisdiction. The state habeas court reached the merits of petitioner's federal constitutional claims.

6. Petitioner remains at liberty on bond. He has served 4½ months of his 12-month sentence.

denied habeas corpus relief. Petitioner then filed objections to the magistrate's report and recommendation, again requesting an evidentiary hearing, but the District Court, after a review of the magistrate's findings, adopted the report as its own opinion and order. Petitioner now appeals this decision.

## II.

Petitioner first attacks the constitutionality of Ga.Code § 26–2610(a) and contends that the statute is invalid on its face.[7] Petitioner argues that § 26–2610 as a whole and § 26–2610(a), specifically, have not been limited to "fighting words" and thus may encompass forms of protected speech. It is clearly apparent, however, that the petitioner was charged with violating only subsection (a) of the statute. The criminal warrant for his arrest makes a specific reference to § 26–2610(a), and the prosecutor's accusation uses such identifying language[8] that there can be no mistake as to which subsection of the statute petitioner was charged with violating. Petitioner's constitutional challenge must therefore stand or fall on the validity of subsection (a).

■ Because § 26–2610(a) punishes only spoken words, it can withstand a challenge to "its facial constitutionality only if, ·as authoritatively construed by the Georgia courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments [citations omitted]." *Gooding*

*v. Wilson*, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972). Petitioner argues that the Georgia state courts have rendered conflicting decisions on the applicability of the statute and that, for this reason, § 26–2610(a) should be declared unconstitutional, as was the statute's predecessor in *Gooding v. Wilson, supra.* The Supreme Court in *Gooding* found that Georgia appellate courts had not construed former Ga.Code § 26–6303 [9] "so as to avoid all constitutional difficulties." *Id.* at 528, 92 S.Ct. at 1109 (citing *United States v. Thirty-seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971)). Because the state courts had "applied § 26–6303 to utterances where there was no likelihood that the person addressed would make an immediate violent response," the Supreme Court held the statute unconstitutionally vague and overbroad under the rule of *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). *Id.* at 528, 92 S.Ct. at 1109.

■ Petitioner cites a number of Georgia appellate decisions as evidence of the inconsistency of the state courts' application of Ga.Code § 26–2610, which was adopted in response to the Supreme Court's decision in *Gooding.* His argument would have some force if all of the cases cited involved subsection (a) of § 26–2610; however, many of the decisions concern defendants who were charged with violating subsection (b) of the statute.[10] In addition, the cases cited that

---

**7.** Several other arguments are raised, all of which we reject without extended discussion: that the charge filed against petitioner was defective in that it was not signed under oath by the County Solicitor; that the charge failed to specify which subsection of § 26–2610 petitioner was alleged to have violated; that the charge failed to state a criminal offense; and that the District Court failed to examine the record sufficiently before approving the magistrate's recommended findings and conclusion. It is also contended that petitioner was prosecuted because he is black, but there is no evidence to support this argument, nor does petitioner suggest that he could produce any.

**8.** The accusation states that petitioner "did without provocation, unlawfully use, to and of [the passenger] and in her presence, the follow-

ing opprbrious wrds [sic] or abusive language to wit: 'I bet you honey doesn't have the nine and a half inch penis I have,' tending to cause a breach of the peace, said words being fighting words." R. 25.

**9.** Ga.Code § 26–6303 provided: "Any person who shall, without provocation, use to or of another, and in his presence ... opprobrious words or abusive language, tending to cause a breach of the peace ... shall be guilty of a misdemeanor."

**10.** Among the cases cited by petitioner is *Grantham v. State*, 151 Ga.App. 707, 261 S.E.2d 445 (1979), in which a defendant was convicted of violating § 26–2610(b) by saying to a woman over the phone: "I want to get between your legs," and "I want to get in bed with you."

do involve alleged violations of § 26–2610(a) are not supportive of petitioner's contention. Application of subsection (a) was specifically limited to "fighting words" by the Georgia appellate courts in *Bolden v. State*, 148 Ga.App. 315, 251 S.E.2d 165 (1978), and *Allen v. State*, 137 Ga.App. 21, 222 S.E.2d 856 (1975), where convictions under the statute were upheld. Reversing a conviction, the court in *Rozier v. State*, 140 Ga.App. 356, 231 S.E.2d 131 (1976), held that a remark made by a young man to a 16-year-old female did not constitute "fighting words."[11] These decisions indicate that Georgia appellate courts have construed § 26–2610(a) to be limited to words that "have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." *Chaplinsky v. New Hampshire, supra*, 315 U.S. at 573, 62 S.Ct. at 770. Because the statute's words do no more than state the *Chaplinsky* and *Gooding* standard, and because the appellate courts of Georgia have not permitted it to be more broadly applied, petitioner's challenge to the facial constitutionality of the statute must fail.[12]

Petitioner also suggests, citing *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), that no one can be validly convicted for using "fighting words" unless the hearer was actually aroused to violence, or the speaker intended such a result.

Obviously petitioner did not intend to provoke his passenger to violence. He had quite another object in mind. And it is undisputed that she did not in fact react violently, perhaps because she was afraid, certainly in part because she showed uncommon coolness, resourcefulness, and presence of mind in very frightening circumstances. Section 26–2610(a) has not been interpreted to require either that the defendant intend to provoke violence, or that the addressee actually react violently. See *Bolden v. State, supra*, 148 Ga.App. at 316, 251 S.E.2d at 166. Therefore, if petitioner's reading of *Cohen* is correct, § 26–2610(a) would proscribe some protected speech, as well as speech that is unprotected because it is within the exception for "fighting words."

We disagree with this reading of *Cohen*. First of all, it makes no sense for a defendant's criminality to depend on the actual reaction of the hearer of the accused words. Under the rule proposed, if the young woman had struck Lamar, or struck at him, he would be validly convicted, but because she had the prudence to restrain herself, his words would be constitutionally protected.[13] It is the *tendency* or *likelihood* of the words to provoke violent reaction that is the touchstone of the *Chaplinsky* test, not whether in a given case violence was de-

Petitioner also lists *D. G. D. v. State*, 142 Ga. App. 266, 235 S.E.2d 673 (1977), and *Breaux v. State*, 230 Ga. 506, 197 S.E.2d 695 (1973). In both cases, however, the defendants were convicted of violating subsection (b) of § 26–2610.

**11.** The defendant in *Rozier v. State, supra*, had said to the young woman in her home and in the presence of her five-year-old brother, "How about some pussy." The court stated, in reversing the conviction, that "[§ 26–2610(a)] is very plainly designed to punish 'fighting words' which by their very utterance tend to incite an immediate breach of peace." 140 Ga.App. at 356, 231 S.E.2d at 131.

**12.** Petitioner argues that his words were not "directed to" the woman but to her boyfriend. We find little merit in this argument.

**13.** This is not a case where the words were addressed to a person who by virtue of his profession or training could be expected to absorb a certain amount of abuse without retali-

ating physically, for example, a policeman. "The situation may be different where . . . words are addressed to a police officer trained to exercise a higher degree of restraint than the average citizen." *Lewis v. City of New Orleans*, 408 U.S. 913, 913, 92 S.Ct. 2499, 2499, 33 L.Ed.2d 321 (1972) (Powell, J., concurring). Nor is this a case where "language of the character charged might well have been anticipated by the audience." *Brown v. Oklahoma*, 408 U.S. 914, 914, 92 S.Ct. 2507, 2508, 33 L.Ed.2d 326 (1972) (Powell, J., concurring). See *Cohen v. California, supra*, 403 U.S. at 20, 91 S.Ct. at 1785, to the effect that the fighting-words doctrine covers words "addressed to the ordinary citizen," like the taxicab passenger in this case. In *Lewis v. City of New Orleans*, 415 U.S. 130, 132 n.2, 94 S.Ct. 970, 972 n.2, 39 L.Ed.2d 214 (1974), the Court declined to decide whether even "fighting words" might be immune from valid punishment when addressed to a trained officer.

sired by the speaker or actually occurred. It is true that the Supreme Court's opinion in *Cohen* contains the observation that "[t]here is . . . no showing that anyone who saw Cohen was in fact violently aroused or that appellant intended such a result." 403 U.S. at 20, 91 S.Ct. at 1785. But this single sentence cannot bear the weight petitioner seeks to rest upon it. We do not read the Court's opinion to say that the State of California could not use the fighting-words doctrine to support its prosecution of Cohen unless it proved either that he intended to provoke violence or that someone did become violent. A reading of the entire paragraph in which the cited sentence appears convinces us that that is not its meaning at all. Rather, the Court was simply refuting the possible argument, see *Feiner v. New York*, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1951), that "exercise of the State's police power" might be permissible "to prevent a speaker from intentionally provoking a given group to hostile reaction." *Cohen*, 403 U.S. at 20, 91 S.Ct. at 1785. The Court had already explained its reasons for holding the fighting-words exception unavailable to the State of California in its attempt to defeat Cohen's First Amendment defense: "While the four-letter word displayed by Cohen in relation to the draft is not uncommonly employed in a personally provocative fashion, in this instance it was clearly not 'directed to the person of the hearer.' *Cantwell v. Connecticut*, 310 U.S. 296, 309, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940). No individual actually or likely to be present could reasonably have regarded the words on appellant's jacket as a direct personal insult." 403 U.S. at 20, 91 S.Ct. at 1785.

We conclude that Ga.Code § 26–2610(a) is not unconstitutional on its face. There is no occasion, of course, to express a view about the validity of any of the other subsections of the statute.

### III.

The question remains whether the statute is invalid as applied to what Lamar said to his passenger. The words are not inflammatory *per se*, without regard to the circumstances in which they were uttered. Compare *Rozier v. State, supra,* in which similar words were held not to be criminal, perhaps because they were spoken in the home of the woman to whom they were addressed, perhaps because the speaker and the addressee were well acquainted before the incident in question occurred. In the instant case, the speaker and the addressee were strangers, a passenger in a cab is in a sense a captive of her driver, and the circumstances must have been alarming. We do not doubt that some women would have reacted violently, and with good reason. On the other hand, the tone of voice may have been jocular rather than hostile, and we do not know, on this record, what the rest of the conversation was like. The circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether these words had "a direct tendency to cause acts of violence" by petitioner's passenger. "[C]onstitutional enforcement of even facially valid laws applied to 'fighting words' now appears to depend as much on the factual circumstances surrounding a word's utterance as on the character of the word uttered." Tribe, *American Constitutional Law* 618 (1978) (footnote omitted). *Accord, Hammond v. Adkisson*, 536 F.2d 237, 239–40 (8th Cir. 1976) ("Although the words used may be judicially noted as profane and abusive, a trier of fact might nonetheless find they did not constitute 'fighting words'—that is, words likely to incite the addressee to a violent reaction under the circumstances of the case"); *Lewis v. City of New Orleans, supra,* 415 U.S. at 135, 94 S.Ct. at 973 (Powell, J., concurring).

■ At this juncture in the analysis, we would ordinarily turn to a discussion of the circumstances in which the accused words were uttered. The difficulty is that we do not and cannot know the circumstances. No transcript of petitioner's trial exists or can be obtained. Both habeas courts refused to have an evidentiary hearing. The facts recounted in the magistrate's recom-

mended findings might well suffice to support a conviction, but they are drawn largely from an unsworn statement of the victim that was apparently not even offered in evidence at the trial. We are driven to the conclusion that the case must be remanded for an evidentiary hearing at which petitioner will be given a chance to establish that what he said, under all the circumstances, did not directly *tend* to cause his passenger to resort to violence, and was not inherently *likely* to cause such a result.

We are mindful of our duty to accord to the state courts' written findings of fact a presumption of correctness, unless one of the eight paragraphs of 28 U.S.C. § 2254(d) applies. See *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). We believe our direction that an evidentiary hearing be held on remand in this case comports with that duty for at least two reasons. First, there is no state-court finding of fact here that is "evidenced by a written finding, written opinion, or other reliable and adequate written indicia," as § 2254(d) requires in order for the presumption of correctness to arise in the first place. The sentence of the State Court of DeKalb County includes as a handwritten preamble the words, "finding of guilty having been entered," R. 18, but those words tell us no more than a general verdict of a jury would have. Nor do we have, as already noted, a transcription of oral findings delivered from the bench. The state habeas court did file a written opinion, with most of which we are in agreement, but it is directed almost entirely to conclusions of law. A section of the opinion discusses and rejects petitioner's contention that the statute is unconstitutional as applied, but no finding is made that petitioner's words tended in fact under all the circumstances to provoke violence from the hearer. The state habeas court did say, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that "this court finds that there was sufficient evidence to justify the fact finder in this case finding the Defendant Joseph Lamar, guilty beyond a reasonable doubt," R. 13, but we are at a loss to see what basis such a finding could

have. Because of the absence of a transcript neither the state habeas court nor anyone else can ever know precisely what evidence the fact finder heard. There was no effort made by counsel at the state habeas hearing to summarize the evidence presented to the trial court in any formal way, and the state habeas court would not permit petitioner to call witnesses. Cf. *White v. Estelle*, 556 F.2d 1366, 1368–69 (5th Cir. 1977) (state court's oral denial of post-conviction relief, supported by a certificate of the state judge filed a year later, is not a "written finding" within the meaning of § 2254(d)).

Second, even if there were a written finding of fact that petitioner's words tended to provoke a resort to violence, we should have to hold that "such factual determination is not fairly supported by the record," 28 U.S.C. § 2254(d), simply because there *is* no record in the sense of testimony about the crucial facts. "Ordinarily such a record—including the transcript of testimony (or if unavailable some adequate substitute, such as a narrative record), the pleadings, court opinions, and other pertinent documents—is indispensable to determining whether the habeas applicant received a full and fair state-court evidentiary hearing resulting in reliable findings [citations omitted]. Of course, if because no record can be obtained the district judge has no way of determining whether a full and fair hearing which resulted in findings of relevant fact was vouchsafed, he must hold one." *Townsend v. Sain*, 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963). *Townsend* was decided before the latest revision of § 2254(d), but the statute as presently written does not differ from the rule of *Townsend* in any respect directly relevant to this case. It necessarily remains true that a finding of fact (assuming there is one) cannot be said to be fairly supported by the record when there is no record, or at least none except an unsworn statement of one witness made neither in court nor in the presence of the defendant.

IV.

The judgment is reversed, and the cause is remanded with directions to hold an evi-

dentiary hearing on the tendency of petitioner's words to provoke his passenger to violence. In all other respects we agree with the District Court's rejection of petitioner's claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.