728 A.2d 943

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Kelly Jo HOCK, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 16, 1998.

Decided May 3, 1999.

410

Madelaine N, Baturin, Kelly Jo Hock, Harrisburg, for appellants.

Daniel Schwartz, Asst. Dist. Atty., David Wingert, Lebanon, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

This appeal presents the issue of whether a single profane remark directed by Appellant Kelly Jo Hock ("Hock") to a police officer provided a sufficient basis to arrest for the offense of disorderly conduct, where only Hock and the officer were present, and Hock's behavior was neither threatening nor violent. As we find the conduct at issue insufficient to support an arrest, we reverse.

On April 13, 1995, at 9:35 a.m., Palmyra Police Officer Kenneth Shank, who was familiar with Hock and aware that her license was suspended, observed Hock driving into the parking lot of her apartment building. The officer positioned his police cruiser alongside Hock's automobile and requested that she produce her driver's license. Hock refused, stating that she had not been driving, but was merely engaged in paperwork. Hock then exited her vehicle and suggested to Officer Shank that she was a victim of frequent police harassment. Remaining in his cruiser, Officer Shank indicated that if his verification of Hock's driving record revealed that her privileges were suspended, she would receive a citation by mail. As Hock walked away from the police vehicle, she uttered, "F___ you, a_____," in a normal tone of voice audible to Officer Shank. Only Hock and the officer were present, and the officer was seated in his cruiser. He then exited his vehicle and advised Hock that she was under arrest for disorderly conduct.

Hock quickened her pace toward her building. Officer Shank pursued her up one flight of stairs, physically restraining her as she attempted to enter her apartment. As the officer placed handcuffs on Hock, he repeated that she was being arrested for disorderly conduct. Hock pressed her arms tightly to her body and curled into a ball on the floor, shouting protestations. She then kicked the patrolman several times, causing him to sustain a cut finger and jammed wrist. Hock was subsequently charged with resisting arrest, 18 Pa.C.S. § 5104, and disorderly conduct, 18 Pa.C.S. § 5503(a).

Hock filed an omnibus pre-trial motion alleging that her arrest was unlawful, seeking suppression of all evidence of her conduct flowing from the arrest, and requesting that all criminal charges against her be dismissed with prejudice. The trial court conducted a hearing, at which Officer Shank was the sole witness, and dismissed the charges. Central to the disposition were the trial court's findings that no persons other than Hock and the officer had been involved in the incident; Hock had not raised her voice when making her remark to Patrolman Shank; and she neither intended to cause, nor recklessly created a risk of, public inconvenience, annoyance or alarm.

On appeal, the Superior Court reversed, focusing its analysis upon the legal concept of "fighting words." It reasoned that Hock's remark contained words that, by their very nature, inflict injury or tend to incite an immediate breach of the peace, and thus created a risk that the officer would respond by using unlawful violence. *See Commonwealth v. Hock*, 696 A.2d 225, 228–29 (Pa.Super.1997). Moreover, the court continued, because the profanity was uttered in a public place, any untoward reaction by the officer would have affected anyone who happened by, thus creating the potential for public alarm. *See id.* The Superior Court concluded that this gave Officer Shank probable cause to arrest Hock for disorderly conduct, and that such probable cause supplied the necessary basis for a lawful arrest so as to support the charge of resisting arrest.[1]

---

1. The Superior Court also noted that Officer Shank could have lawfully arrested Hock outside the apartment building due to her failure to obey his lawful command to produce her driver's license, *see id.* at 227, and

The court noted that the disorderly conduct charge actually lodged against Hock was predicated not upon her offensive language, but solely upon her combative behavior during the arrest. *See id.* at 229 & n. 6. Such physical resistance, the court concluded, created a hazardous or physically offensive condition by actions that had no legitimate purpose, *see* 18 Pa.C.S. § 5503(a)(4), and hence supported the charge. The Superior Court thus reversed the trial court's order and remanded the case for further proceedings on both criminal charges.

▆▆▆▆ In this appeal, we need only decide whether the trial court appropriately dismissed the charge of resisting arrest based upon its holding that Hock's offensive language alone did not support a charge of disorderly conduct.[2] In evaluating an accused's entitlement to pre-trial *habeas corpus* relief, a trial court must determine whether there is sufficient evidence

the Commonwealth vigorously advances this argument on appeal to this Court. While it is clear that the police may arrest a motorist who flees from an officer's lawful command to produce driving credentials, it is equally clear from the record that Officer Shank did not intend to arrest Hock for that summary offense. He made no effort to do so, but instead remained in his vehicle and stated that Hock would receive a citation in the mail if her privileges were suspended. It was only after Hock's epithet that the officer exited his vehicle and told her that she was under arrest for disorderly conduct. Accordingly, Hock's arrest cannot be validated by her prior refusal to produce her license.

2. This is the sole issue framed by Hock in her petition for allowance of appeal. Hock has not raised the separate question of whether there was sufficient evidence to support the disorderly conduct charge actually lodged against her as a result of her kicking the officer.

We also note that a motion to dismiss is not the proper means by which to test the sufficiency of the Commonwealth's evidence pre-trial. *See* Pa.R.Crim.P. 306, Comment; *Commonwealth v. Nicodemus*, 431 Pa.Super. 342, 347, 636 A.2d 1118, 1121 (1993), *appeal denied*, 540 Pa. 580, 655 A.2d 512 (1994). Rather, the proper vehicle is a petition for a writ of *habeas corpus. See Commonwealth v. McBride*, 528 Pa. 153, 156 n. 2, 595 A.2d 589, 590 n. 2 (1991); *Commonwealth v. Hetherington*, 460 Pa. 17, 23, 331 A.2d 205, 209 (1975). The Commonwealth, however, did not object to this procedural defect. Therefore, we will review the trial court's decision according to the standards applicable to a writ of *habeas corpus. See generally Commonwealth v. Ballard*, 501 Pa. 230, 232 n. 1, 460 A.2d 1091, 1092 n. 1 (1983) (treating a pleading incorrectly styled as a motion to quash in the manner of a *habeas corpus* petition).

to make out a *prima facie* case that the defendant committed the crime with which he or she is charged. *See generally Commonwealth v. Rachau,* 670 A.2d 731, 733 n. 5 (Pa.Cmwlth. 1996) (citing *Commonwealth v. Kowalek,* 436 Pa.Super. 361, 364, 647 A.2d 948, 949 (1994)). The Commonwealth has the burden to show probable cause that the defendant committed the offense. *Id.* An appellate court must generally consider whether the record supports the trial court's factual findings, and whether the inferences and legal conclusions drawn from those findings are free of error. *See Commonwealth v. Besch,* 544 Pa. 1, 2 n. 1, 674 A.2d 655, 655 n. 1 (1996); *Commonwealth v. Gordon,* 546 Pa. 65, 73, 683 A.2d 253, 257 (1996).

The offense of resisting arrest is set forth at Section 5104 of the Crimes Code, which provides:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. Thus, a valid charge of resisting arrest requires an underlying lawful arrest, which, in turn, requires that the arresting officer possess probable cause. *Commonwealth v. Biagini,* 540 Pa. 22, 32, 655 A.2d 492, 497 (1995). In this case, the asserted probable cause was predicated upon the offense of disorderly conduct, defined at Section 5503 of the Crimes Code as follows:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a). Under the statute, whether a defendant's words or acts rise to the level of disorderly conduct

hinges upon whether they cause or unjustifiably risk a public disturbance. "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Greene,* 410 Pa. 111, 115, 189 A.2d 141, 144 (1963).

To support its contention that Hock's profanity constituted a violation of Section 5503(a)(1), thus giving the officer probable cause to arrest, the Commonwealth relies upon *Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54, *appeal dismissed,* 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980), for the proposition that the use of fighting words amounts to disorderly conduct.[3] In *Mastrangelo,* this Court affirmed a disorderly conduct conviction where the defendant had, on two consecutive days, followed a meter maid and shouted vulgarities at her in a threatening manner. This conduct was observed by bystanders on the street, and so frightened the meter maid that she could not patrol that area for a week.

The present case is clearly distinguishable in that Hock's single epithet, uttered in a normal tone of voice while walking away from the officer, did not alarm or frighten him, and there were no bystanders. Nevertheless, according to the Commonwealth, Hock's insult rises to the level of disorderly conduct because of the police-initiated violence it could have generated. The police must be provided with a lawful recourse when insulted in such a manner, the Commonwealth avers, lest they "respond to obscene, defiant and combative behavior with obscene, defiant and combative behavior of their own." We disagree.

First, we are not persuaded that Hock's epithet constituted fighting words. The *Mastrangelo* court's conclusion that the defendant had utilized fighting words rested on the fact that the defendant had hurled epithets at the meter

3. As previously noted, fighting words are words that " 'by their very utterance inflict injury or tend to incite an immediate breach of the peace.' " *Mastrangelo,* 489 Pa. at 262, 414 A.2d at 58 (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942)). The use of such words is not a constitutionally protected right. *Id.*

maid in a loud, boisterous and disorderly fashion. *Id.* at 262, 414 A.2d at 58. Indeed, in determining whether words constitute fighting words, "[t]he circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether [the] words had a direct tendency to cause acts of violence by [others]." *Lamar v. Banks,* 684 F.2d 714 (11th Cir.1982) (internal quotation marks omitted); *see Lewis v. City of New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974) (Powell, J., concurring) (observing that "words may or may not be 'fighting words' depending upon the circumstances of their utterance"); *see also Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (upholding a state statute in part because it had been interpreted to do "no more than prohibit the face-to-face words plainly likely to cause a breach of the peace"). Under the factual circumstances of the present case, a trier of fact could not reasonably find that Hock's comment risked an immediate breach of the peace.

Additionally, we decline to accept the Commonwealth's suggestion that the police are likely to respond to verbal insults with unlawful violence. Indeed, to the contrary, that police officers have a legal duty to enforce the law is sufficient reason to presume that they will not violate the law. *See generally City of Chicago v. Blakemore,* 15 Ill.App.3d 994, 305 N.E.2d 687, 689 (1973) ("[W]ords addressed to an officer in an insolent manner do not without any other overt act tend to breach the peace because it is the sworn duty and obligation of the officer not to breach the peace and beyond this to conduct himself so as to keep others from so doing").

We recognize that the police often place their lives in jeopardy to ensure the safety of the citizenry and thus perform a task that is valuable, necessary and, at times, heroic. Accordingly, the prospect of a citizen verbally abusing a police officer appears particularly objectionable. It does not follow, however, that Section 5503(a) may be used as a vehicle to protect the police from all verbal indignities, especially under the dubious hypothesis that officers are likely to break

the law when affronted. The police must expect that, as part of their jobs, they will be exposed to daily contact with distraught individuals in emotionally charged situations. *See generally Commonwealth v. Weiss,* 340 Pa.Super. 427, 434, 490 A.2d 853, 856 (1985). Moreover, the offense of disorderly conduct

> is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more than the alleged criminal has the right to operate within its clearly outlined circumference.

*Greene,* 410 Pa. at 117, 189 A.2d at 145.[4]

In sum, we hold that Hock's remark did not constitute disorderly conduct, and the officer thus lacked probable cause to arrest her for that offense. Accordingly, we reverse the judgment of the Superior Court insofar as it relates to the charge of resisting arrest, and reinstate the trial court's order dismissing that charge. The case is remanded to the trial court for further proceedings consistent with this opinion.

Justice CASTILLE files a dissenting opinion.

CASTILLE, Justice, dissenting.

I believe that directing profanities in a public place at a police officer who is attempting to perform his lawful duty constitutes disorderly conduct. Accordingly, I respectfully dissent.

The disorderly conduct statute provides:

4.  We also note that an interpretation of Section 5503 imposing a *per se* proscription on remarks of the kind uttered by Hock would implicate substantial First Amendment concerns. *See Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, **annoyance** or alarm, or recklessly creating a risk thereof, he: 1) **engages in fighting or threatening, or in violent or tumultuous behavior;** (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or 4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(emphasis added).[1]

This Court has held that a violation of section 5503(a) may occur when a person utters "fighting words." *Commonwealth v. Mastrangelo*, 489 Pa. 254, 262, 414 A.2d 54, 58 (1980). "Fighting words" are "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 262, 414 A.2d at 58, (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)). In *Mastrangelo*, this Court upheld the appellant's conviction for disorderly conduct where the appellant followed a metermaid down the street calling her a host of foul and insulting names.

Similarly, in *Commonwealth v. Pringle*, 304 Pa.Super. 67, 73, 450 A.2d 103, 107 (1982), the Superior Court held that the words "godd—n f——ing pigs" were fighting words when directed at police officers on a public street while the officers

1. Appellant's words, while certainly obscene according to common parlance, do not fit the definition of "obscene" under section 5503(a)(3) of the disorderly conduct statute. For purposes of the disorderly conduct statute, language is obscene if it meets the test set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973): whether the average person would find that the language appealed to prurient interests, whether the language depicted or described, in a patently offensive way, sexual conduct specifically defined by any applicable state law, and whether the language lacked serious literary, artistic, political, or scientific value. *See Commonwealth v. Bryner*, 438 Pa.Super. 473, 652 A.2d 909 (1995) ("go to hell Betsy" not obscene); *see also United States v. McDermott*, 971 F.Supp. 939 (E.D.Pa.1997) (noting that Pennsylvania General Assembly adopted Miller test to define obscene in 18 Pa.C.S. § 5903(b); "this is bull—", "I'm not f——ing going anywhere" not obscene). Accordingly, this Court analyzes appellant's behavior in this matter under section 5503(a)(1).

attempted to carry out their lawful duties. In *Pringle,* police were attempting to arrest an unruly person in front of a tavern. The subject of the arrest was violently resisting attempts to subdue him. A crowd of people gathered to watch. The appellant joined the crowd and repeatedly shouted the epithets at the officers. The Superior Court stated that "one may be convicted of disorderly conduct for engaging in the activity of shouting profane names and insults at police officers on a public street while the officers attempt to carry out their lawful duties." *Id.* at 71–72, 450 A.2d at 105–06. I am persuaded by the reasoning of the Superior Court and find it applicable to the matter *sub judice,* where appellant directed the profanity at a police officer who was engaged in the line of duty.

The Superior Court correctly concluded in the matter herein that the fact that Officer Shank was the only person who had the displeasure of hearing petitioner's remarks does not support the trial court's finding that petitioner could not have intended to cause and could not have recklessly created a risk of public inconvenience, annoyance, or alarm. As used in section 5503,

> the word public means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503(c).

One who exhibits disorderly behavior in a public place is guilty of disorderly conduct even if that behavior is directed at a single individual. *Commonwealth v. Young,* 370 Pa.Super. 42, 45, 535 A.2d 1141, 1143, *alloc. denied,* Pa., 518 Pa. 649, 544 A.2d 961 (1988). Although in *Mastrangelo, supra,* other persons on the street observed the appellant's conduct, this fact was not crucial to this Court's determination that the appellant had, in fact, engaged in disorderly conduct. Rather, this Court determined that the appellant had uttered fighting words despite the fact that none of the bystanders testified in

court or were incited to violence by the appellant's words.  *See Mastrangelo,* at 257, 414 A.2d at 56.   Likewise, the fact that other persons were present to hear the profanity uttered by the appellant in *Pringle, supra,* as opposed to the instant matter, does not make *Pringle* less persuasive.   The disorderly conduct statute is clear that a person violates the statute if they engage in fighting behavior with the intent to cause public annoyance.   Here, appellant uttered her words on a public street for the sole purpose of antagonizing the officer performing his duty.

Nor is it controlling that the words in *Mastrangelo* were shouted.   Here, appellant said the words loud enough for her intended target, the police officer, to hear.   I agree with the Superior Court's determination in the instant case that appellant's statements fall within the category of "fighting words" in violation of section 5503(a).

In addition, appellant chose highly offensive words which showed blatant disrespect and hostility.   Had appellant's words been addressed to a layman, the words would have had a direct tendency to incite him to acts of violence.   The Superior Court correctly concluded that there is no reason why a police officer or other public official responsible for maintaining law and order should have to be the object of obscenities and vulgarities of the type which would create a breach of the peace if directed at a layman.   The statute specifically states that *recklessly creating a risk* of public annoyance is sufficient.   Here, appellant uttered "F—— you, a—hole," to a police officer, on a public street, loud enough for the officer to hear.   This behavior falls squarely within the ambit of section 5503(a).   Therefore, the Superior Court properly concluded that fighting words directed at a police officer have as much legal significance as those directed against any other citizen of this Commonwealth.

Finally, I point out that the fact that appellant uttered these words, did, in fact, result in violence.   Although the officer remained admirably calm, he attempted to place appellant under arrest following her execration, and she responded by curling into a ball and repeatedly kicking the officer.   Had

appellant chosen to refrain from vilifying the officer, she could have proceeded peacefully into her apartment, because the officer had concluded the business in relation to her latest driving offense.[2]

For these reasons, I would affirm the Superior Court.

2. Appellant's driving record reveals that her operating privileges had been suspended over thirty times.