## Commonwealth v. Robertson

*Gracia Robert Montilus,* for defendant/appellant.
*Holly Smith,* for Commonwealth/appellee.

FRITSCH JR., *J.,* April 4, 2008—On January 18, 2008, following a de novo trial before the undersigned, this court found the appellant, Bryce Robertson, guilty of the summary offenses of disorderly conduct and public drunkenness.[1] The convictions stemmed from appellant's

---

1. Disorderly conduct, 18 Pa.C.S. §5503(a)(4), and public drunkenness and similar conduct, 18 Pa.C.S. §5505.

drunken and disorderly conduct while he was staying at a hotel with his wife and children. The appellant was sentenced to pay fines of $300 and costs on each offense.

Appellant has filed an appeal to the Superior Court of Pennsylvania from the judgment of sentence. This opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## FACTUAL AND PROCEDURAL BACKGROUND

On Saturday, June 16, 2007, the appellant was staying at the Radisson Hotel in Bensalem Township with his wife, son and daughter, along with other parents and children associated with a youth basketball team. The group had traveled from New York to attend a basketball tournament in the Philadelphia area. Appellant was an assistant coach, and his 12-year-old daughter played on the team. (N.T., 1/18/08, pp. 172-73.)

On Saturday evening at approximately 9 p.m., appellant and a group of about 10 other parents assembled in the lobby of the Radisson. They pushed furniture together and some began drinking shots of alcohol from half-gallon containers sitting on a table. Other parents were drinking beer. (N.T., 1/18/08, pp. 6-8.) The assemblage became noisy and was consequently approached by Suzanne Gambino Rivera, the manager on duty. Upon noticing the alcohol, she informed them that they could not drink alcoholic beverages in the lobby and asked the group to disperse and take the alcoholic beverages up to their rooms. (N.T., 1/18/08, pp. 7-8, 58-59.) In response, several men from the group arose and confronted Ms. Rivera, somewhat encircling her and becoming physi-

cally intimidating. She was poked several times by one individual, who told her that he would do anything he wanted. At that point the police were called to the hotel. (N.T., 1/18/08, pp. 8-10.) Appellant, who was visibly intoxicated, began to argue with her loudly and at close range. (N.T., 1/18/08, pp. 62-63.) He disparaged Ms. Gambino Rivera, calling her a "f-ing bitch" and a "WOP with a badge on her shoulder." (N.T., 1/18/08, pp. 11-12, 60.) Fortunately, the group began to disperse from the lobby before hotel security and the police arrived. (N.T. 1/18/08, pp. 12-13.)

Later that evening, at approximately 11:45 p.m., the front desk at the hotel received a complaint that children were upset in appellant's room on the fourth floor. (N.T., 1/18/08, pp. 15-16.) Ms. Rivera and hotel security officer Kevin Pate responded. Appellant opened the door and came out into the hallway. He appeared intoxicated and approached Ms. Rivera, cursing loudly and berating her. (N.T., 1/18/08, pp. 16-17.) After checking on the children, Mr. Pate attempted to calm down the appellant, but to no avail, as appellant began cursing at him as well. (N.T., 1/18/08, pp. 84-86.) Other guests on the fourth floor, upon hearing the commotion, began coming out into the hallway. (N.T., 1/18/08, pp. 17, 86, 135, 156.) The police were again summoned to the hotel. (N.T. 1/18/08, pp. 17, 88.)

Bensalem Township police officers responded to the fourth floor and found the appellant standing by his doorway with a beer bottle in hand. (N.T., 1/18/08, p. 120.) The trained officers found him to be visibly intoxicated, exhibiting slurred speech and unsteady gait, with an odor of alcoholic beverage on his breath. (N.T., 1/18/08, pp. 120, 130, 141, 155.) Ms. Rivera asked that

the officers remove appellant from the premises. Rather than complying, appellant began arguing with the officers in a boisterous and combative manner. He got so close to Officer Dennis Hart that he spat in his face as he yelled at him. (N.T., 1/18/08, p. 155.) When Officer Hart put his hands up to cover his face and protect himself from the spitting, appellant feigned contact and flopped backwards, bracing himself in his doorway and alleging "police brutality". (N.T., 1/18/08, p. 155.) Appellant also stuck out his jaw at Officer Hart and stated "hit me" and threatened suit. (N.T., 1/18/08, pp. 146, 156-57.)

After entering and exiting his room numerous times, and following several loud outbursts containing defiant and vulgar language, appellant reluctantly agreed to leave the hotel peacefully with the officers. (N.T. 1/18/08, pp. 142, 158.) He was escorted to his vehicle in the hotel parking lot, where his family joined him. Officer Hart informed the appellant that he wished to administer a portable breath test (PBT), whereupon appellant again became upset. (N.T. 1/18/08, p. 158.) He came to within six inches of Officer Hart's face and began cursing at him and arguing. (N.T., 1/18/08, p. 159.) At that point, Officer Hart had no recourse but to tell appellant he was placing him under arrest. When the officer reached for appellant's arm, appellant flopped onto the ground with his arms underneath him, requiring the officers to forcibly handcuff him. (N.T., 1/18/08, pp. 146, 158.) Appellant was subsequently charged with the offenses at issue.

## ISSUES RAISED ON APPEAL

In response to the order of this court pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), appellant

has filed a statement of errors complained of on appeal in the form of a memorandum challenging and discussing the sufficiency of the evidence with respect to the charges at issue, with an emphasis on the argument that the conduct in question did not occur in a public place. Accordingly, we shall address in our discussion both offenses with respect to the sufficiency of the evidence.

## DISCUSSION

### Disorderly Conduct

In the case at bar, the appellant was charged with the summary offense of disorderly conduct, 18 Pa.C.S. §5503(a)(4), which provides:

"A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . . (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

At trial, we found that the Commonwealth witnesses, consisting of hotel staff, hotel security and several Bensalem Township police officers, were credible, and we did not find the testimony presented by the defense to be believable with respect to the dispositive facts in the case. From this perspective, we shall discuss the evidence as it relates to the charges.

The evidence clearly established that the appellant engaged in conduct which created a physically offensive condition. He approached both hotel employees and the police in a menacing manner while verbally abusing them in a loud voice. He stood face to face with them at ex-

tremely close range such that he was spitting at them as he spoke, requiring them to protect their faces with their hands. He provoked and baited hotel security and the police with bodily gestures such as sticking out his chin and flopping about, thereby creating some risk of bodily contact. Rather than peaceably submitting to arrest, he threw himself to the ground, requiring the police to use force to bring him under control. Furthermore, such unruly conduct continued after many pleas to desist, and over a substantial period of time.

We are mindful that the offense of disorderly conduct is not to be a catchall for conduct that is merely uncivil, annoying or irritating, See *Commonwealth v. Gilbert,* 449 Pa. Super. 450, 674 A.2d 284 (1996), nor is it to apply in all situations where police officers suffer verbal indignities. See *Commonwealth v. Hock,* 556 Pa. 409, 728 A.2d 943 (1999). The present facts, however, as described herein, clearly are sufficient to support at the very least a summary disorderly conduct conviction.

Appellant maintains that the conduct in question did not occur in a public place, and therefore, the disorderly conduct statute cannot apply. We do not find appellant's argument persuasive. The disorderly conduct statute sets forth the definition of "public" as follows:

"(c) Definition.—As used in this section the word 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access: among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public."

Hotel premises are certainly places of business, open and accessible to the public. Any member of the public may park in a hotel parking lot, enter the hotel lobby and inquire about obtaining a room. Hotels also commonly contain restaurants and gift shops, open and accessible to the public. Furthermore, once an individual becomes a paying patron of a hotel, there is no reason why that person should not retain his or her right to be protected by the laws pertaining to public conduct when in common areas of the hotel.

In the instant case, appellant's unruly and intimidating conduct took place in the busy hotel lobby, an upstairs common hallway for hotel guests and the hotel parking lot. With respect to the upstairs hallway, which one might consider the most private of those areas, the appellant's noisy behavior drew other hotel guests out of their rooms and actually caused public annoyance and alarm. Clearly, with respect to the other locations, his conduct at the very least recklessly created a risk of such a result.

For the above-stated reasons, we determined that the appellant's conduct was both physically offensive and recklessly impacted the public, and therefore, we found him guilty of the summary offense of disorderly conduct.

*Public Drunkenness*

Appellant was also charged in this case with the summary offense of public drunkenness, 18 Pa.C.S. §5505, which provides in pertinent part:

"A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol . . . to the degree that he may endanger himself

or other persons or property, or annoy persons in his vicinity."

Appellant maintains that the evidence did not establish that he was "manifestly under the influence of alcohol." This argument clearly lacks merit. Several Bensalem Township police officers who responded to the Radisson Hotel gave unequivocal testimony concerning the appellant's state of intoxication. Officer Donald Schwab, an experienced patrolman who has made approximately two thousand driving under the influence arrests, described the appellant as "highly intoxicated". (N.T., 1/18/08, p. 120.) Officer Nicholas Suder related that the appellant had slurred speech, red bloodshot eyes and an odor of an intoxicating beverage emanating from his breath. (N.T., 1/18/08, pp. 130, 127.) Officer John Catrombon described the appellant as "highly intoxicated," with bloodshot eyes, slurred speech, and a strong odor of alcohol on his breath. (N.T., 1/18/08, p. 141.) He further related that the appellant had trouble standing and yelled, cursed and screamed constantly in the upstairs hallway. (N.T. 1/18/08, pp. 141-42.) Officer Dennis Hart also described the appellant as "very highly intoxicated," with slurred speech and very bad balance. (N.T., 1/18/08, p. 155.)

Based on the totality of the credible testimony, it is apparent that the appellant was manifestly under the influence of alcohol on the night of June 16, 2007 and during the early morning hours of June 17, 2007.

In the context of the public drunkenness charge, appellant also contends that he was not in a public place, or in the alternative, that if he was in a public place, he was not there voluntarily and his conduct is somehow

excused by the fact that the police caused him to be there. We do not find either of these arguments persuasive.

As discussed above, hotel lobbies, hallways and parking lots are clearly public places where the public has access. Indeed, the testimony established that members of the public, including children, were actually present at those locations when the appellant was engaging in drunken and disorderly conduct. (N.T., 1/18/08, pp. 17, 86, 135, 149, 156.)

With respect to the conduct of the police, we disagree that they alone were responsible for appellant being intoxicated in a public place. When summoned to appellant's room, the officers requested that appellant quietly remain in his room and gather his belongings so that he could leave the premises. Rather than comply, the appellant repeatedly came out of his room of his own volition, confronting the police and creating an uproar that caused other hotel guests to come out of their rooms and assemble in the hallway. It is also relevant to the issue of volition that hotel security, when they initially responded to appellant's room, never instructed him to leave. Once they determined that his children were unharmed, they requested that he merely remain quietly in his room. (N.T., 1/18/08, pp. 86-87.) Only when he refused to do so and became boisterous and profane in the hallway did security summon the police to remove him. Thus, it was appellant who caused himself to come into contact with the public in an intoxicated state.

For the reasons stated above, we determined that the appellant was manifestly under the influence of alcohol in a public place to a degree that he might endanger and

annoy persons in his vicinity. Accordingly, we found him guilty of the summary offense of public drunkenness.

Finally, we feel compelled to state that we found this case particularly disturbing because minor children were impacted by appellant's drunken and disorderly conduct. The children were given an opportunity to spend a weekend away from home and participate in a basketball tournament. It should have been a time of family fun, good competition and learning. Regrettably, due to the excessive drinking of appellant, the trip turned into an experience that will evoke painful memories for those young people who witnessed appellant's unruly behavior.

## CONCLUSION

For the foregoing reasons, this court finds no merit in appellant's allegations of error.