J-S22045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONELL C. HALL, | |
| Appellant | No. 895 MDA 2016 |

Appeal from the Judgment of Sentence May 20, 2016
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0003172-2015

BEFORE:  SHOGAN, J., MOULTON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 16, 2017**

Appellant, Donell C. Hall,[1] appeals from the judgment of sentence imposed after his jury conviction of resisting arrest.[2]  We affirm.

We take the factual background of this case from our independent review of the certified record and the trial court's July 25, 2016 opinion.

> On April 6, 2015, Detective Dennis Simmons [] and Detective Donald Heffner [] of the Harrisburg Bureau of Police Organized Crime and Vice Control Unit were in plain clothes in an

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's name also appears in the certified record as Charles Donell Hall. (**See, e.g.**, Arraignment, 7/27/15, at 1).  However, we will use the name as it is listed on the trial court docket and in the trial court's opinion. (**See** Trial Court Docket, CP-22-CR-003172-2015, at 2; Trial Court Opinion, 7/25/16, at 1).

[2] 18 Pa.C.S.A. § 5104.

unmarked vehicle patrolling the city of Harrisburg. At approximately 3:00 P.M., they were in the area of 13th and Swatara Streets when they heard loud music coming from a red Dodge Magnum parked on the south side of the street. The music was so loud that the windows on the vehicle were vibrating. When they passed the vehicle, Detective Simmons observed Appellant's co-defendant, Curtis Hall [(Curtis),[3]] to be in the driver's seat. At that time, Detective Simmons made the decision to issue a citation,[a] but had to drive around the block to get back to where the vehicle was parked.

> [a] There is a city ordinance in Harrisburg which prohibits loud noise and loud music, and a violation occurs when you can hear the music/noise within fifty (50) feet of where you are standing. It is a summary citation which Detective Simmons testified that he has issued numerous times as both a uniformed officer and a detective.

By the time the detectives came back around and parked on Swatara Street, Detective Simmons observed Curtis in the yard to the rear of 401 South 13th Street walking towards the rear entrance of the building. The yard was fenced in, but the gate was open. Detective Simmons approached Curtis in the yard, identified himself as a police officer and asked for his identification in order to issue the citation. . . .

Since Curtis was not complying with verbal commands and was becoming [increasingly] agitated and aggressive, Detective Simmons made the decision to detain Curtis, primarily for officer safety. . . . [Curtis continued to resist, and] Detective Heffner came over to assist. . . .

In the midst of the struggle between Curtis and the detectives, several people came out of the residence where the incident began and started to gather around. One of those people was Appellant, who approached the scene and began yelling at the detectives, asking why they were wrestling with his

---

[3] Curtis filed a separate appeal from his judgment of sentence in this matter, at docket number 894 MDA 2016.

brother. Appellant was told several times to step back away from the scene.

Appellant refused, and continued to walk towards the detectives with his hands clenched and chest expanded in an aggressive stance. Detective Heffner testified that he thought Appellant was going to swing at Detective Simmons. Appellant came so close to the detectives while they were still struggling with Curtis that Detective Simmons had to risk releasing the grasp on Curtis in order to push Appellant away. Appellant pushed Detective Simmons back. At this time, there were approximately fifteen (15) to twenty (20) people that had come out of their residences to see what was going on and Detective Heffner believed they were outnumbered and starting to lose control. The crowd was yelling and cursing, and ultimately made the entire situation volatile and dangerous.

After Curtis was arrested and placed into handcuffs, Detective Heffner told Appellant that he would be arrested for interfering with the lawful arrest of Curtis. Appellant was directed to place his hands behind his back. He refused and when Detective Heffner reached for Appellant's arm, Appellant grabbed both of Detective Heffner's wrists and shoved him backwards. Detective Heffner shoved Appellant back in an attempt to gain control. Detective Simmons [saw] the struggle between Detective Heffner and Appellant, [swept] Appellant's feet and they all [fell] to the ground. Appellant then [tried] to stand up, refusing to give the detectives his arm to be handcuffed. At that time, back-up officers and probation officers arrived on scene, and came over to assist in the arrest of Appellant.

Since Appellant was unable to be controlled, Detective Heffner asked Probation Officer Brandon Rigel [] to deploy the stun gun on Appellant. PO Rigel deployed a drive stun to Appellant's leg, and [the] detectives were finally able to get Appellant's arms behind his back to be handcuffed. By the end of the struggle, Detective Heffner had a scraped right hand, scrapes up and down his right arm, and bruising on the back of his right arm. In addition, his glasses were knocked off during the struggle and were scratched.

(Trial Court Opinion, 7/25/16, at 2-5) (record citations omitted).

- 3 -

The Commonwealth charged Appellant with two counts of resisting arrest, and one count each of obstructing administration of law[4] and criminal mischief—damage to property.[5]  On May 20, 2016, the jury convicted Appellant of one count of resisting arrest.  The same day, the trial court sentenced him to twenty-four months' county probation.  Appellant timely appealed on May 25, 2016, and filed a timely court-ordered statement of errors complained of on appeal on June 7, 2016.  The court filed an opinion on July 25, 2016.  *See* Pa.R.A.P. 1925.

Appellant raises one issue for this Court's review:

I.    Whether the evidence at trial was insufficient to prove that Appellant committed the crime of resisting arrest where the Commonwealth failed to prove beyond a reasonable doubt:

A. That Appellant created a substantial risk of bodily injury or resisted arrest by means justifying or requiring substantial force to overcome his resistance; and

B. That there was an underlying lawful arrest?

(Appellant's Brief, at 5).

Our standard of review of this matter is well-settled:

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense

_____

[4] 18 Pa.C.S.A. § 5101.

[5] 18 Pa.C.S.A. § 3304(a)(5).

- 4 -

beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

***Commonwealth v. Reese***, 156 A.3d 1250, at 1257-58 (Pa. Super. 2017) (citation omitted). Pursuant to section 5104 of the Crimes Code:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104.

In this case, Appellant argues that the evidence was insufficient to support his conviction where "the Commonwealth failed to prove that [he] created a substantial risk of bodily injury or resisted arrest by means justifying or requiring substantial force to overcome his resistance." (Appellant's Brief, at 12) (unnecessary capitalization and emphasis omitted). We disagree.

> The statute, it is clear, does not require the aggressive use of force such as a striking or kicking of the officer. A person resists arrest by conduct which "creates a substantial risk of bodily injury" to the arresting officer **or** by conduct which justifies or requires "substantial force to overcome the resistance."

***Commonwealth v. Miller***, 475 A.2d 145, 146 (Pa. Super. 1984) (footnote omitted) (emphasis added). In other words, "the statute includes the disjunctive phrase 'or employs means justifying or requiring substantial force to overcome resistance.'" ***Commonwealth v. Lyons***, 555 A.2d 920, 925

(Pa. Super. 1989) (concluding that elements for resisting arrest were met where it took four deputies to subdue appellant, thereby requiring substantial force "to overcome appellant's resistance to the arrest.") (citations omitted).

Here, the trial court explained:

Detectives Simmons and Heffner testified as to how Appellant interfered with their lawful arrest of Curtis. Appellant was yelling and screaming. (*See* N.T. Trial, 5/19/16, at 27-28, 30, 90-91). He came up behind the detectives in an aggressive stance, [was told to step back, but instead charged toward them,] and Detective Heffner believed Appellant was going to punch Detective Simmons. (*See id.* at 27-28, 90, 126). This caused Detective Simmons to let go of Curtis, leaving Detective Heffner alone in trying to handcuff him, in order to get Appellant to back away from the scene. (*See id.* at 90, 126).

In addition, when Detective Heffner advised Appellant that he would be placed under arrest for his interference with the lawful arrest of Curtis, Appellant refused to comply[, grabbed both of the detective's wrists,] and shoved [him]. (*See id.* at 30, 91, 127). Detective Heffner shoved back and a struggle[] ensued. (*See id.* at 91, 127). Detective Heffner testified that by this time he was exhausted from the previous struggle with Curtis. (*See id.* at 92). He also stated that the crowd around them had grown and had become unruly, causing the detectives to be outnumbered and believe they were losing control of the situation. (*See id.* at 28, 90).

PO Rigel also testified at the trial and corroborated the testimony of both Detective Simmons and Detective Heffner. When PO Rigel arrived on scene, he observed Appellant pulling away and flailing around from the detectives as they were trying to detain him. (*See id.* at 137). Appellant refused to give the detectives his hands, therefore the detectives requested PO Rigel to deploy his Taser, and he did. (*See id.* at 92, 137) After being tased, the detectives were finally able to forcibly place Appellant in handcuffs. (*See id.* at 137). PO Rigel also testified that Appellant appeared to be bigger than both Detective Simmons and Detective Heffner. (*See id.* at 138).

(Trial Ct. Op., at 6-7) (footnote omitted) (record citation formatting and some record citations provided).

The foregoing facts establish that, with the intent of preventing his lawful arrest, Appellant resisted police, requiring their use of substantial force to overcome his resistance. **See Lyons**, **supra** at 925; **Miller**, **supra** at 146. Appellant's first issue does not merit relief. [6]

In his second claim, Appellant maintains that the evidence was insufficient to support the charge of resisting arrest because "[t]he

_____

[6] Neither are we legally persuaded by Appellant's reliance on **Commonwealth v. Rainey**, 426 A.2d 1148 (Pa. Super. 1981). (**See** Appellant's Brief, at 13-16). In **Rainey**, officers woke the defendant from a drunken stupor, handcuffed him, and were escorting him to the police vehicle when he attempted to flee. **See Rainey**, **supra** at 1148-49. To thwart that attempt, the officer grabbed the defendant by the sleeve and he "began to shake himself violently, to wiggle and squirm in an attempt to free himself of the officer's grasp." **Id.** at 1149. This Court found that the Commonwealth failed to establish that the defendant resisted arrest, and that at most this was a minor scuffle, where the defendant merely attempted to "shake off the policeman[] detaining [him,]" and he neither "struck, nor struck out at the arresting officers; nor did he kick or push them." **Id.** at 1150. However, here, Appellant aggressively approached the scene of Curtis' arrest, yelled at the detectives, refused to back away, shoved a detective, and fought the attempts to handcuff him, all in what the detectives assessed as a dangerous, volatile situation. These circumstances are distinguishable from the minor scuffle presented in **Rainey**. Moreover, **Rainey** only considered the amount of force a defendant must expend for a resisting arrest claim. It did not address the "substantial force" required by the police to overcome the defendant's resistance. Therefore, for all of these reasons, **Rainey** is inapposite to the circumstances presented here and is not legally persuasive.

Commonwealth failed to prove that there was an underlying lawful arrest." (Appellant's Brief, at 16). We disagree.

"[A] valid charge of resisting arrest requires an underlying lawful arrest, which, in turn, requires that the arresting officer possess probable cause." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999) (citation omitted). Pursuant to section 5101 of the Crimes Code: "A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act[.]" 18 Pa.C.S.A. § 5101. "Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citation and internal quotation marks omitted).

In this case, Detectives Simmons and Heffner observed a noise violation by Curtis. Detective Simmons approached Curtis in the yard, for the purpose of issuing a citation, and identified himself as a police officer. When Curtis began struggling, Appellant approached the scene and started yelling at the detectives. They told him several times to step away, but he refused and continued to walk aggressively toward them. It appeared to

Detective Heffner that Appellant was going to swing at Detective Simmons. He came so close to them while they were still struggling with Curtis that Detective Simmons had to risk losing his grip on him in order to push Appellant away. Appellant pushed the detective back.

Based on the foregoing, we conclude that the facts and circumstances were sufficient to provide Detectives Heffner and Simmons with probable cause to effectuate Appellant's lawful arrest for obstructing the administration of law. *See Thompson*, *supra* at 931; *Hock*, *supra* at 946. Appellant's second issue does not merit relief.

Hence, in summary, the trial court properly found that the evidence was sufficient to support the charge of resisting arrest where the detectives had probable cause to arrest Appellant for obstructing the administration of law and were required to use substantial force to overcome his resistance. *See Reese*, *supra* at 1257-58.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/16/2017

- 9 -