J-S12004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| DANIEL MATTHEW KLAHR | : : | |
| Appellant | : : | No. 1518 MDA 2017 |

Appeal from the Judgment of Sentence September 6, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-SA-0000239-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 13, 2018**

Daniel Klahr appeals from his judgment of sentence, entered in the

Court of Common Pleas of Berks County, following his summary conviction[1] of

disorderly conduct (public inconvenience).[2]  After careful review, we affirm.

---

[1] As this Court stated in **Commonwealth v. Parks**, 768 A.2d 1168 (Pa.
Super. 2001):

> Our standard of review of a trial court's adjudication entered
> following a *de novo* trial on a summary offense is limited to
> whether the trial court committed an error of law and whether the
> findings of the trial court are supported by competent evidence.
> The adjudication of the trial court will not be disturbed on appeal
> absent [an] . . . abuse of discretion.  An abuse of discretion exists
> when the trial court has rendered a judgment that is manifestly
> unreasonable, arbitrary, or capricious, has failed to apply the law,
> or was motivated by partiality, prejudice, bias, or ill will.

*Id.* at 1171 (citations and quotation marks omitted).

[2] 18 Pa.C.S. § 5503(a)(4).

The trial court aptly summarized the facts of the case as follows:

On April 19, 2017, Heather Bailey, with her son as a passenger, parked in a perpendicular parking space in the lot of a McDonald's in Exeter Township, Berks County, having planned to meet someone there. She noticed she had parked somewhat crooked, so she began to move out of the space and back in to straighten out her car. At this point, []Klahr pulled in with his pickup truck and trailer, parking across several marked spaces with the front of his truck pointing toward the driver side of Ms. Bailey's car. Ms. Bailey testified that the truck was quite close to her car, while [Klahr] testified there was a space in between.

With her window still closed, Ms. Bailey turned toward [Klahr] and said, "What are you doing?" or possibly, "What the **** are you doing?" She initially testified that she did not use the obscenity but admitted she may have, but perhaps only after [Klahr] got out of his truck and asked her, "What the **** did you say?" The evidence did not establish the exact sequence of events, but the two argued. [Klahr] began videotaping and walking around Ms. Bailey's car. Ms. Bailey opened her window and told [Klahr] to get away from her car, said she would call the police, and indeed did call and speak to dispatch. [Klahr] told Ms. Bailey she needed to learn how to park and made comments about her smoking in the car with her son and using bad language around him. [Klahr] continued to record video while leaning against his truck and eating a sandwich. Ms. Bailey got out of her car, now visibly and audibly on the phone with dispatch, and went to get the license plate number from the back of [Klahr's] truck. [Klahr] got back into his truck, backed up a bit, and then drove forward to leave. As he pulled forward, his truck hit the side of Ms. Bailey's leg. She was not hurt.

Mr. [Michael] Flaherty, his girlfriend Casssandra Kern, and their two daughters were also parked at the McDonald's. The commotion attracted their attention, particularly as the argument got louder. Mr. Flaherty testified to hearing the argument, seeing the parking situation, seeing [Klahr] videotaping, and seeing [Klahr's] truck graze Ms. Bailey's leg. Mr. Flaherty, feeling that he had witnessed a hit-and-run, asked his girlfriend to get out and stay with their daughters and with Ms. Bailey, while he drove after [Klahr]. He called 911 and followed [Klahr] for several minutes, eventually blocking [Klahr's] vehicle with his own and alerting a police officer in an unmarked SUV. By the end of the incident,

when Ms. Kern came over to ask if they were okay, Ms. Bailey and her son were crying.

Trial Court Opinion, 11/21/17, at 1-3.

After a summary hearing, before the Honorable Madelyn S. Fudeman, Klahr was found guilty of disorderly conduct and ordered to pay a $300.00 fine. This timely appeal follows, in which Klahr presents one issue for our consideration: "Whether the evidence at trial was insufficient as a matter of law wherein the Commonwealth's evidence presented at trial failed to establish that [Klahr] committed any act(s) which either jeopardized the public peace, prompted civil unrest, or otherwise arose to a disorderly conduct offense." Appellant's Brief, at 5.

Pursuant to section 5503, disorderly conduct is defined, in relevant part as:

> A person is guilty of disorderly conduct if, **with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof**, he:
>
> \* \* \*
>
> (4) **creates a hazardous or physically offensive condition** by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a)(4) (emphasis added). "Public" is defined in section 5503(a)(4) as any place "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, **places of business** or amusement, any neighborhood, or any premises which are open to the public." *Id.* at § 5503(c) (emphasis added).

- 3 -

"The offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." ***Commonwealth v. Maerz***, 879 A.2d 1267, 1269 (Pa. Super. 2005) (quoting ***Commonwealth v. Hock***, 728 A.2d 943, 947 (Pa. 1999)). "It has a specific purpose; it has a definite objective, it is intended to preserve the public peace." ***Id.*** Our courts have repeatedly emphasized that the goal of section 5503 is to protect the public. ***See Commonwealth v. Fedorek***, 946 A.2d 93, 100 (Pa. 2008) ("Certainly, [s]ection 5503 is aimed at protecting the public from certain enumerated acts."); ***Hock***, ***supra*** at 946 ("The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.").

When reviewing a sufficiency of the evidence claim, we consider:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

Instantly, the trial court acknowledges that it "placed considerable weight on the testimony of a disinterested witness, Michael Flaherty." Trial Court Opinion, 11/21/17, at 1. At the summary hearing, Flaherty testified that he had his window down in the McDonald's parking lot and heard "a commotion;" he turned around and "saw a couple arguing." N.T. Summary Hearing, 9/6/17, at 20. Flaherty noticed that Klahr's and Bailey's voices got louder as their argument escalated. *Id.* at 22. Flaherty testified that he watched the situation in the McDonald's parking lot unfold between Klahr and Bailey, observed Klahr videotaping the incident, and watched as Klahr's truck pulled off and grazed Bailey's right leg. *Id.* at 20. Believing that he had witnessed a hit-and-run, Flaherty asked his girlfriend to stay with Bailey while he followed Klahr's truck for a couple miles, eventually blocking Klahr's truck, and calling 9-1-1 about the situation. *Id.* at 21.

Bailey testified that Klahr walked around her vehicle videotaping her and her son for several minutes, despite her protests to stop, which made her feel uncomfortable and prompted her to call the police. *Id.* at 15. Bailey also testified that when Flaherty's girlfriend and daughters went to check on her, both she and her seven-year-old son were crying. *Id.* at 8.

Under these circumstances, there was sufficient evidence to prove that Klahr was guilty of the summary offense of disorderly conduct. He created a physically offensive condition by arguing loudly, continuing to videotape Bailey

and her son against her protestations, and hazardously driving off in his truck and striking Bailey's leg in the process. Moreover, the altercation occurred in a public place, a McDonald's restaurant, with bystanders who were disturbed by the disruptive situation. *Cf. Hock*, *supra* (defendant's actions did not constitute disorderly conduct where defendant uttered single epithet in normal tone of voice while walking away from an officer, did not alarm or frighten officer, and there were no bystanders).

Viewing all of the evidence admitted at trial, in the light most favorable to the Commonwealth as the verdict winner, there was sufficient evidence to enable the fact-finder to find every element of disorderly conduct beyond a reasonable doubt. *Bruce*, *supra*.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/13/2018