# Commonwealth v. Hill

C.P. of Lawrence County, no. 90 of 2010, CR.

*William J. Flannery, assistant district attorney,* for Commonwealth.

*Bradley G. Olson Jr.,* for defendant Hill.
*Michael A. Frisk Jr.,* for defendant Adam Pounds.
*Jonathan R. Miller,* for defendant Melissa Pounds.

MOTTO, *P.J.,* October 29, 2010—Before the court for disposition are the petitions for a writ of habeas corpus filed on behalf of each of the defendants which contend that the commonwealth failed to establish a prima facie case that the defendants committed any of the offenses with which they were charged. The cases were consolidated for purposes of trial as they all arise out of the same incident and involve the same witnesses and victims.

The defendants and the commonwealth agreed that the issues could be resolved by review of the transcript of the preliminary hearing, from which the court finds the following: On the evening of October 19, 2009, officer Michael McBride and Officer Chris Hardie of the Ellwood City Police Department were dispatched to the area of 13th Street and Beaver Avenue in Ellwood City for a report of a male being assaulted. Upon arrival, the officers spoke with a female at 1224 Beaver Avenue who advised them that a white male had just knocked at her door and asked her to call the police because his friend

was being assaulted in the residence across the street. The officers went to the residence across the street and knocked on the door and there was no answer. The officers checked the surrounding area to see if they could locate any victims and viewed a gold Dodge Dakota occupied by Melinda Pounds, John Borkovich Jr., and a 14-year-old female juvenile. Officer McBride spoke to them briefly and asked them if they saw an assault or commotion in the area and they advised him they saw nothing and drove off. Officer McBride proceeded to drive around the area, and, upon turning onto Volps Way, saw a black male lying in the shrubs along the side of the alleyway wearing only underwear and a sock. Upon approaching the man, Officer McBride viewed cuts and bruising all over his body including his face, arms, back, chest and legs. The victim, who was later identified as Gary Brooks II, was unable to get up on his own, was screaming in pain and was unable to tell the officer what had occurred. As Officer McBride was waiting for the ambulance to arrive to take the victim to the hospital he advised other units to be on the look-out for the gold Dodge Dakota.

The vehicle was found and the occupants were brought to the police station for questioning. Melinda Pounds gave a statement that as she was leaving her house at 104 13th Street her brothers, Adam and Justin Pounds, were in the residence with some black males and they were fighting. Officer McBride proceeded to the hospital to try and interview the victim, Mr. Brooks, who was very confused and disoriented. Officer McBride was told by Mr. Brooks' wife that he was shot in the head a few years ago and is

now mentally challenged and that he and his friend Steven Plum would come to the police station to speak with them tomorrow. Officer McBride was informed that Mr. Brooks was with Mr. Plum at the 13th Street residence when they both were assaulted and it was Mr. Plum who ran from the residence and solicited the neighbors to call the police.

The next morning Mr. Brooks and Mr. Plum went to the police station to be interviewed by Lieutenant Dave Kingston. Mr. Plum explained the events that transpired the night before. Mr. Plum stated that about 4:00 p.m. Mr. Brooks called Melinda Pounds. She invited him over to her house to hangout with her and a few friends. Because of Mr. Brooks' limited mental capacity, Mr. Plum decided to go with him to this house. When they arrived at the residence they were met by Melinda Pounds and another female who walked them into the residence and then down into the basement. The basement was dark and Melinda Pounds lead then into a back room and asked Mr. Plum for his cell phone. When he refused to give her his cell phone, she turned the lights on and there were numerous men, some with masks on, standing around the room. Mr. Plum estimated that there were between nine to ten men standing in the room and one man sitting on the bed. Several of the men had weapons including a hammer, pipe, broomstick, a bottle of Mean Green spray and a piece of gas-line with bolts in it. The men standing around the room told Mr. Plum and Mr. Brooks that they were being robbed and that they were leaving there naked. Mr. Plum said that the men took his cell phone and ball cap and he was struck several times all over his body resulting

in physical injury. Mr. Plum tried to grab Mr. Brooks and run upstairs but the men in the room had surrounded Mr. Brooks, so Mr. Plum proceeded to run upstairs and out of the residence and over to the neighbors house to call for help.

Although Mr. Brooks was unable to speak to the police because of his mental condition, the police were advised that while he was at the 13th Street residence he was robbed of his black Dickies coat, black Nike shoes, a black hat, his blue jeans, his prescription Hydrocodone and his gold wedding band.

On November 29, 2009, Mr. Plum went back to the police station where Officer McBride and Lt. Kingston conducted two photo arrays. The first photo array contained 40 photos of white males. Mr. Plum positively identified Michael Viccari and a 17-year-old male juvenile as two of the men who participated in assaulting and robbing him and Mr. Brooks that night at Melinda Pounds' residence. The second photo array contained 16 photos of black males and Mr. Plum was able to positively identify James Hill III as another actor.

As a result of information received through interviews and Mr. Plum's identification of the actors involved in the assault and robbery, defendants Melinda Pounds, Adam Pounds and James Hill III were arrested. James Hill III and Adam Pounds were charged with criminal conspiracy to commit robbery[1], criminal conspiracy to

---

1. 18 Pa.C.S.A. §903(a)(1).

commit robbery - inflict threat of imminent bodily injury[2], criminal conspiracy to commit simple assault[3], criminal conspiracy - aiding in simple assault[4].criminal conspiracy to commit theft by unlawful taking[5], criminal conspiracy - aiding in theft by unlawful taking[6], two counts of robbery[7], two counts of simple assault[8], and two counts of theft by unlawful taking[9] at case numbers 90 of 2010 and 91 of 2010 respectively. In addition, Melinda Pounds was charged with two counts of criminal conspiracy to commit robbery[10] and two counts of criminal conspiracy to commit theft by unlawful taking[11] at case number 92 of 2010. A preliminary hearing was held on January 28, 2010, before Magisterial District Judge Jennifer Nicholson. Mr. Plum testified against the defendants. Mr. Plum identified Melinda Pounds as the female who invited him and Mr. Brooks into the house and escorted them into the basement where they were robbed and attacked by group of males. Mr. Plum positively identified James Hill, III as one of the black men who attacked him in the basement and struck him with a broom stick. Mr. Plum was not able to positively identify Adam Pounds as one of the males who attacked him. Magisterial District Judge Nicholson bound all the charges against James Hill, III and Melinda Pounds and the conspiracy charges against

2. 18 Pa.C.S.A. §903(a)(2).
3. 18 Pa.C.S.A. §903(a)(1).
4. 18 Pa.C.S.A. §903(a)(2).
5. 18 Pa.C.S.A. §903(a)(1).
6. 18 Pa.C.S.A. §903(a)(2).
7. 18 Pa.C.S.A. §3701(a)(1)(iv).
8. 18 Pa.C.S.A. §2701(a)(1) and (4).
9. 18 Pa.C.S.A. §3921(a).
10. 18 Pa.C.S.A. §903(a)(1).
11. 18 Pa.C.S.A. §903(a)(1).

Adam Pounds over to this court. The defendants filed a petition for writ of habeas corpus, which contends the commonwealth failed to establish a prima facie case that the defendants committed any of the offenses with which they were charged.

Filing a petition for a writ of habeas corpus is the appropriate method by which a defendant may challenge a pre-trial finding that the commonwealth has presented sufficient evidence to establish a prima facie case. *Commonwealth v. Karlson*, 674 A.2d 249 (Pa. Super. 1996); see also *Commonwealth v. McBride*, 528 Pa. 153, 595 A.2d 589 (1995); *Commonwealth v. Carmody*, 799 A.2d 143 (Pa. Super. 2002). However, in a habeas corpus proceeding, the commonwealth may present evidence, additional to what was presented at the preliminary hearing, in order to establish that the defendant has committed the elements of the offense as charged. *Karlson*, 674 A.2d 249.

In evaluating an accused's entitlement to pre-trial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged. *Commonwealth v. Hock*, 556 Pa. 409, 728 A.2d 943 (1999). The commonwealth must satisfy this evidentiary burden by presenting evidence that established a crime was committed and that there is a probability that the defendant committed the crime. *Commonwealth v. Fox*, 619 A.2d 327 (Pa. Super. 1993). The commonwealth establishes a prima facie case by offering some proof to establish each material element of the offense as charged.

*Commonwealth v. Owen*, Pa. 580 A.2d 412 (Pa. Super. 1990). The commonwealth is not required to prove this by the "beyond a reasonable doubt" standard; however, the commonwealth must satisfy a standard of "sufficient probable cause" that the accused has committed the offense. *Commonwealth v. Prosdocimo*, 479 A.2d 1073 (Pa. Super. 1994).

The commonwealth meets the burden of establishing a prima facie case when it submits evidence that, if accepted as true, would warrant a trial judge to allow the case to go to a jury. *Commonwealth v. Marti*, 779 A.2d 1177 (Pa. Super. 2001). Evidence must be presented concerning each element of the crime charged. *Id.* Such evidence must be viewed in the light most favorable to the commonwealth. *Id.* Furthermore, the commonwealth is entitled to all reasonable inferences that can be drawn from the evidence presented. *Id.* The weight or credibility of the evidence is not at issue during the preliminary hearing. *Id.*

In each of the cases before this court the defendants are charged with two counts of criminal conspiracy to commit robbery and two counts of criminal conspiracy to commit theft by unlawful taking, one count on the theory of an agreement between defendants whereby they would engage in conduct which would constitute robbery and theft by unlawful taking and a separate count on the theory that defendants agreed to aid each other in the planning or commission of the crimes of robbery and theft by unlawful taking. In addition, defendants James Hill III and Adam Pounds are also charged with two counts of criminal

conspiracy to commit simple assault, one count on the theory of an agreement between defendants whereby they would engage in conduct which would constitute simple assault and a separate count on the theory that defendants agreed to aid each other in the planning or commission of the crime of simple assault.

Criminal conspiracy is defined by statue as follows:

*Criminal Conspiracy,* 18 Pa.C.S.A. §903

(a) Definition of conspiracy. - A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Conspiracy is the agreement of two or more persons to act in concert for a criminal purpose. The commonwealth must prove that (1) defendant entered an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and that (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. Johnson,* 920 A.2d 873 (Pa. Super. 2007); *Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025, 1030 (1996), cert. denied, 520 U.S. 1231, 117 S.Ct. 1825 (1997).

The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished. *Commonwealth v. Keefer*, 338 Pa. Super. 184, 487 A.2d 915, 918 (1985). Mere association with the perpetrators, mere presence as the scene, or mere knowledge of the crime is insufficient. *Id.* Rather, the commonwealth must prove that the defendant shared the criminal intent, i.e., that the defendant was an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement. *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000). The defendant does not need to commit the overt act; a co-conspirator may commit the overt act. *Commonwealth v. Johnson*, 719 A.2d 778, 784 (pa. Super. 1998) (en banc), *appeal denied*, 559 Pa. 689, 739 A.2d 1056 (1999).

A conspiracy is almost always proved through circumstantial evidence. *Commonwealth v. Swerdlow*, 636 A.2d 1173, 1176 (Pa. Super 1994). The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt. *Johnson*, 719 A.2d at 785. The evidence must, however, rise above mere suspicion or possibility of guilty collusion. *Swerdlow*, 636 A.2d at 1177. In *Swerdlow*, the court established criteria to follow when determining the existence of a criminal conspiracy:

Among the circumstances that are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged

conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish 'a web of evidence' linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred. *Id.* at 1177.

Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. *Commonwealth v. Stocker*, 622 A.2d 333, 342 (Pa. Super 1993). Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy. *Commonwealth v. Soto,* 693 A.2d 226, 229-30 (Pa. Super. 1997), *appeal denied,* 550 Pa. 704, 705 A.2d 1308 (1997).

In the cases sub judice, Mr. Plum testified that Melinda Pounds had a phone conversation with Mr. Brooks in which she invited him to her house to hang-out for the evening. She gave them directions and met them at the Dollar General store and walked them the rest of the way over to her house and down into the basement. The basement was dark and Melinda Pounds lead then into a back room and asked Mr. Plum for his cell phone. When he refused to give her his cell phone, she turned the lights on and there were nine to ten men, some with masks on, standing around the room with weapons including a hammer, pipe, broomstick, a bottle of Mean Green spray

and a piece of gas-line with bolts in it. The men stated to Mr. Plum and Mr. Brooks that they were being robbed and that they were leaving there naked. Mr. Plum said that the men took his cell phone and ball cap and he was struck several times all over his body resulting in physical injury. Mr. Plum unequivocally identifies Melinda Pounds as the woman who invited him into her home lead him down into the basement and into a dark room in the back where men were waiting to rob him and Mr. Brooks of their personal possessions and James Hill III as the one hitting him with the broom-stick and taking his cell phone. If Mr. Plum's testimony is accepted as true, for the purposes of evaluating the defendant's motion for writ of habeas corpus, then the commonwealth has established a prima facie case as to the conspiracy to charges against Melinda Pounds and James Hill III.

Defendant Melinda Pounds argues that the commonwealth has failed to present any evidence that she entered into an agreement with any of the co-defendants to promote or facilitate the crime of robbery or theft. Robbery and theft by unlawful taking are defined as follows:

*Robbery,* 18 Pa.C.S.A. §3701.

(a)(1) Offense defined. - A person is guilty of robbery if, in the course of committing a theft, he:

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

*Theft By Unlawful Taking,* 18 Pa.C.S.A. §3921.

(a) Movable property. - A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

The conduct of Melinda Pounds and James Hill III supports the finding that they entered into an agreement whereby they would commit the offenses of robbery and theft upon the victims and they agreed to aid each other in the commission of the offenses of robbery and theft. Melinda Pounds contends that the only testimony presented was that Mr. Plum and Mr. Brooks went to her residence to hang out with her and another girl and that they entered the basement where the assault and robbery allegedly occurred. Melinda Pounds further argues that the fact that Mr. Plum and Mr. Brooks were assaulted and robbed in the basement allegedly by the co-defendants and unnamed other males is, in and of itself, insufficient to establish that an agreement existed between her and these individuals. This court disagrees.

Melinda Pounds invited the victims over to her house and escorted them into a dark basement where James Hill III and a number of other men were waiting with masks and weapons to rob them. As Ms. Pounds was escorting them downstairs she tried to take Mr. Plum's cell phone from him. After she brought them into the back room, one of the men in the basement stated to the victims that they were being robbed and they were leaving there naked. It can be inferred that an agreement existed between Melinda Pounds and the other individuals present in the basement that she would invite the victims to the residence, escort them into the back room of the basement in the dark and

turn the light on as her co-conspirators were waiting with masks and weapons to rob the victims. In his testimony, Mr. Plum set forth an account of the events that transpired leading up to, during, and after he and Mr. Brooks were escorted into Ms. Pounds' basement where he and Mr. Brooks were assaulted and robbed. In his recollection, he stated that once he and Mr. Brooks were in the house Melinda Pounds took them directly down into a back room of the basement, and, after trying to take his cell phone, she turned the lights on, exposing nine or ten men standing around the room, one of them James Hill III, telling them they we being robbed and they were leaving the house naked. One of the males wearing a mask and holding a hammer and told him to "empty his pockets, we're taking everything." Mr. Plum's testimony, when reviewed in a light most favorable to the commonwealth, provides sufficient evidence that Melinda Pounds and James Hill III conspired to commit robbery and theft.

In the case against Adam Pounds, Mr. Plum was unable to identify Mr. Pounds as one of the perpetrators in the house when he and Mr. Brooks were robbed and assaulted. When officer McBride testified, he stated that in his initial interview with Melinda Pounds she stated that her brothers Adam and Justin Pounds were home earlier in the day wrestling around in the kitchen, but she did not say that Adam Pounds was in the basement at any time. The only person mentioning Adam Pounds was Melinda Pounds in her statement to Officer McBride on the night of the attack when she stated that her brother, Adam Pounds, and another brother, were fighting in the residence with black males. The statement made at the preliminary hearing by Officer McBride is hearsay and inadmissible against the

co-defendant Adam Pounds, and even if admissible, does not implicate Adam Pounds in a conspiracy, or in any of the crimes with which he is charged. Because Mr. Plum is not able to identify Adam Pounds as being present in the basement and there is no other evidence implicating him in the conspiracy, the commonwealth cannot present a prima facie case that Adam Pounds was associated with the co-conspirators, that he had knowledge of the commission of the crimes or that he was part of a conspiracy to commit robbery and theft upon the victims. Therefore, the conspiracy to commit robbery and the conspiracy to commit theft charges against him must be dismissed.

Additionally, defendants James Hill and Adam Pounds were charged with conspiracy to commit simple assault. Simple assault is defined as follows:

*Simple Assault.* 18 Pa.C.S.A. § 2701.

(a) offense defined. - A person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury;

This court has already reviewed the evidence as it relates to the charge of conspiracy. The charge of simple assault requires that one cause or attempt to cause bodily injury to another. In his testimony, Mr. Plum stated that when the lights were turned on in the basement the men standing around him stated "this is a robbery and you are leaving here naked." Mr. Plum said some of the men were

holding weapons and he felt threatened and was in fear of bodily injury. Mr. Plum testified he was hit multiple times and sustained bodily injuries. He stated that while he was in the basement he was struck with a broomstick by defendant James Hill III nd as a result he suffered injuries to his body. Additionally, Officer McBride testified that when he found Mr. Brooks laying on the side of the road he was wearing only underwear and a sock and he had cuts and bruising all over his body including his face, arms, back, chest and legs. Officer McBride stated Mr. Brooks was unable to get up on his own and was screaming in pain. Accordingly, the commonwealth has presented a prima facie case that defendant James Hill III conspired to cause bodily injury to Mr. Plum and Mr. Brooks.

With regard to defendant Adam Pounds, because Mr. Plum was unable to identify Adam Pounds as being present in the basement and there is no other evidence implicating him in the conspiracy, the commonwealth cannot present a prima facie of conspiracy to commit simple assault with respect to this defendant. Thus, the charges of conspiracy to commit simple assault are dismissed.

Finally, defendant James Hill III is also charged with two counts each of robbery, theft by unlawful taking and simple assault, with one count relating to victim Steven Plum and the other count to victim Gary Brooks II. In his testimony, Mr. Plum set forth an account of the events that transpired leading up to, during, and after the assault and robbery in the basement. In this recollection, he identified James Hill III as one of the perpetrators who assaulted him with a broomstick and took his cell phone. Additionally, Mr. Plum testified that as a result of the assault he sustained bodily injury. It is apparent that

this testimony, if it is believed, would warrant this court to allow this case to be determined by a jury. This court is precluded from passing judgment on the credibility and weight of the evidence presented at the preliminary hearing because weight and creditability are issues reserved for a jury to decide at a later date. This testimony, when reviewed in a light most favorable to the commonwealth, provides sufficient evidence that defendant James Hill III committed robbery, theft by unlawful taking and simple assault with regard to Mr. Plum.

As for the charges of robbery, theft by unlawful taking and simple assault filed against defendant James Hill III as they relate to victim Gary Brooks II, this court finds that the commonwealth has established a prima facie case. Although there is no direct testimony that Hill himself assaulted or committed a theft against Brooks, Hill was one of the group of men lying in wait in the basement for the purpose of beating and robbing Brooks and Plum. The commonwealth set forth evidence that Mr. Brooks was found on the side of the road assaulted and without his clothes and personal belongings. It is inferable from the evidence that the group of men in the basement of the home collectively had an agreement to act in concert with one another to beat and rob Brooks. Hill was identified as one of those men and therefore an accomplice in the commission of these crimes. In *Commonwealth v. Darden,* 457 A.2d 549 (Pa. Super 1983), the Superior Court held that where the evidence was sufficient to show that defendant was part of a criminal conspiracy in the robbery of a bank and an accomplice in the robbery, he was vicariously liable for the criminal acts of his co-

conspirators in furtherance of the common design. Here, since Hill was part of the conspiracy to beat and rob Brooks and Plum, he is liable for all of the acts of his co-conspirators and accomplices in carrying out the agreed upon objective.

For all the foregoing reasons in this opinion, defendant Adam Pounds' petition for writ of habeas corpus is granted and all the charges are dismissed. The court finds that the commonwealth has met its burden to prove a prima facie case as to all the charges against defendants Melinda Pounds and James Hill, III, therefore, their petitions for a writ of habeas corpus are each denied.

## ORDER OF COURT

And now, October 29, 2010, after hearing on the petition for writ of habeas corpus filed by each of the above defendants, and in accordance with the accompanying opinion of even date herewith, it is ordered, adjudged and decreed as follows:

1. The petition for writ of habeas corpus of defendant James William Hill, III is denied.

2. The petition for writ of habeas corpus of defendant Adam Matthew Pounds is granted and all charges against Adam Matthew Pounds at the above term and number are dismissed.

3. The petition for writ of habeas corpus of defendant Melinda Pounds is denied.

4. The court notes that the above captioned cases of defendant Hill and Melinda Pounds are currently on the November 2010 trial list.