J-A04026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARVIN COMOND | : | |
| | : | |
| Appellant | : | No. 446 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 21, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-SA-0000317-2023

BEFORE: LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED: AUGUST 19, 2025**

Appellant Marvin Comond appeals *pro se* from the judgment of sentence imposed after he was convicted by the trial court in a non-jury trial of one count of disorderly conduct[1] following a summary appeal. Appellant argues that the evidence was insufficient to sustain his conviction and contends that the Commonwealth asked leading questions on direct examination. After review, we reverse the judgment of sentence and discharge Appellant.

The trial court summarized the facts of this matter as follows:

On May 20, 2023 at approximately 4:43 p.m., Officer Brandon Morris and Officer Ashley Borman-Parker were dispatched to the 800 block of Spring Street in Wyomissing, Berks County, Pennsylvania, as a result of complaints of a possible fight and a possible accident between Appellant and his neighbor, Edgar Martinez-Molina[.] [N.T., 3/21/24 at 18, 28, 36]. Mr. Martinez-Molina testified that he was coming home from the gym and arrived to see his family and friends having a picnic outside. ***Id.***

---

[1] 18 Pa.C.S. § 5503(a)(1).

at 5. There was no parking in front of his house, so he parked in front of Appellant's house. Appellant and Mr. Martinez-Molina are next door neighbors. *Id.* at 8. After attending to his family behind his house, Mr. Martinez-Molina came back to the front and saw that Appellant had parked his vehicle in a way that Appellant's rear bumper was compressing the front of Mr. Martinez-Molina's car. *Id.* at 6. There were no cars parked in front of the Appellant's vehicle. *Id.* at 9. Instead of calling the authorities, Mr. Martinez-Molina knocked on Appellant's door and a loud screaming argument followed. *Id.* On a scale of one (1) to ten (10), Mr. Martinez-Molina said they were loudly yelling at a volume of eight (8). *Id.* at 10. Mr. Martinez-Molina also testified that Appellant called him a "f*g" and said "f**k you" to him during the heated exchange. *Id.* at 12. Appellant remained on his property, and with some prodding from his family, Mr. Martinez-Molina returned to his own property while the shouting continued. *Id.* at 15, 16. Two people, including Mr. Martinez-Molina's cousin, called 9-1-1 to report the incident. *Id.* at 13, 36.

Officer Borman-Parker testified that the commotion was so loud that she could hear it over her running vehicle, police radio and siren from several blocks away. *Id.* at 28. When Officer Morris and Officer Borman-Parker separately pulled up to the scene, a crowd of about fifteen people were standing on the sidewalk, driveway and on the porch of Mr. Martinez-Molina's residence. *Id.* at 13, 35.

Officer Morris testified that Appellant was upset with the situation, seemed angry and talked firmly. *Id*. at 19. Appellant acknowledged that "an argument ensued over his vehicle being parked too close to his neighbor's vehicle." *Id.* at 20. Appellant further acknowledged parking his vehicle next to Mr. Martinez-Molina's upon questioning by Officer Morris. *Id.*

Through her open patrol car window, Officer Borman-Parker told Appellant and Mr. Martinez-Molina to cease fighting and yelling. *Id.* at 25. The crowd dispersed, and the commotion quieted down. *Id.* at 19. Appellant asked Officer Barman-Parker to issue Mr. Martinez-Molina a citation. *Id.* at 26. Both Appellant and Mr. Martinez-Molina received citations. *Id.* at 14. Mr. Martinez-Molina confirmed that he pled guilty to his charge, paid the fine and immediately took accountability for engaging with Appellant, saying that it was petty and that he has moved forward. *Id.* at 16.

Trial Ct. Op., 5/13/24, at 1-3 (some formatting altered).

On August 29, 2023, Appellant was found guilty of disorderly conduct before the magisterial district court and filed a timely summary appeal to the trial court. The trial court held a non-jury trial *de novo* on March 21, 2024. At the trial, Appellant appeared *pro se*, the trial court questioned Appellant about waiving his right to counsel, and the trial court permitted Appellant to represent himself. **See** N.T., 3/21/24, at 3-4. At the conclusion of the *de novo* trial, the trial court found Appellant guilty of disorderly conduct under Section 5503(a)(1) and imposed a $300 fine. **See id.** at 41. Appellant filed a timely appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises three issues, which we have renumbered[2] as follows:

1. Whether the trial court erred as a matter of law in finding the words "fa\*\*ot" and "f\*\*k you" sufficient to find [A]ppellant guilty of disorderly conduct 18 [Pa.C.S.] § 5503 [](a)(1)?

2. Whether the trial court erred as a matter of law in finding [Appellant] guilty without the Commonwealth meeting the elements for disorderly conduct 18 [Pa.C.S.] § 5503 []§ (a)(1)?

3. Whether the trial court erred as a matter of law in allowing the Commonwealth to lead the witness/instigator to say anything that would incriminate [Appellant]?

---

[2] For purposes of our discussion, we will address Appellant's issues challenging the sufficiency of the evidence separately from Appellant's evidentiary challenge.

- 3 -

Appellant's Brief at 5 (footnote omitted, issues renumbered, and formatting altered).

Before we reach the issues Appellant raised on appeal, we first address Appellant's waiver of his right to counsel. *Commonwealth v. Forrester-Westad*, 282 A.3d 811, 816 (Pa. Super. 2022). "Given the inherent importance of the right to counsel and the right to self-representation, this Court has a duty to review, *sua sponte*, whether a defendant waived his or her right to counsel knowingly, voluntarily, and intelligently before proceeding in every critical stage of a criminal proceeding[.]" *Id.* (citations and emphasis omitted); *see also Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998) (requiring "an on-the-record determination . . . that [a defendant's] waiver [of the right to counsel] is a knowing, intelligent, and voluntary one" (citations omitted)).

> A judge's thorough inquiry into the accused's appreciation of both the right to counsel and the right to represent oneself must be used in certain summary proceedings, at trial, guilty plea hearings, sentencing, and every critical stage of a criminal proceeding. A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage.

*Commonwealth v. Johnson*, 158 A.3d 117, 122 (Pa. Super. 2017) (citations omitted and formatting altered).

To ensure that a defendant's waiver of counsel is knowing, voluntary, and intelligent, there must be a colloquy on the defendant's understanding of at least the following six elements:

(1) whether the defendant understands that he has a right to be represented by counsel and the right to free counsel if he is indigent, (2) whether the defendant understands the nature of the charges against him and the elements of each of those charges, (3) whether the defendant is aware of the permissible range of sentences and/or fines for the offenses charged, (4) whether the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules, (5) whether the defendant understands that there are possible defenses to these charges [of] which counsel might be aware, and if these defenses are not raised they may be lost permanently, and (6) whether the defendant understands that, in addition to defenses, the defendant has other rights that, if not timely asserted, may be lost permanently and that if errors occur and are not objected to or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

*Commonwealth v. McDonough*, 812 A.2d 504, 506-07 (Pa. 2002) (citing, *inter alia*, Pa.R.Crim.P. 121).

Here, the record reflects the following exchange between Appellant and the trial court regarding counsel:

THE COURT: [Appellant], you don't have an attorney?

[Appellant]: I do not, Your Honor. But with the court's attention, I filed a motion to dismiss the charges on Tuesday. I'm not sure if the court has it.

THE COURT: I do have it. My first—hold on. My first question to you is are you willing to proceed without an attorney?

[Appellant]: I am.

THE COURT: You understand all the rules apply to you, you need to understand the Rules of Evidence [and] you'll be bound by them.

[Appellant]: Yes, Your Honor.

THE COURT: And criminal procedure and the substantive law of your case.

[Appellant]: Yes, Your Honor.

THE COURT: All right. Then you can represent yourself in this. I understand you filed a motion to dismiss the charge. We don't do that in this case. We're just going to have your hearing.

[Appellant]: Very well.

N.T., 3/21/24, at 3-4. After review, the record reflects that the trial court did not fully address all six elements set forth in **McDonough** and Pa.R.Crim.P. 121(A)(2).

However, when a defendant is charged with a summary offense, neither the United States Constitution nor the Pennsylvania Constitution guarantees the defendant an absolute right to counsel. **See Commonwealth v. Smith**, 868 A.2d 1253, 1256 (Pa. Super. 2005). Rather, "[t]he right to counsel in summary cases attaches only to those defendants who are unable to employ counsel when there is a likelihood that imprisonment will be imposed." **Id.** (citations omitted and formatting altered); **see also** Pa.R.Crim.P. 122(A)(1) (stating "[c]ounsel shall be appointed . . . in all summary cases, for all defendants who are without financial resources or who are otherwise unable to employ counsel when there is a likelihood that imprisonment will be imposed"). When there is not a likelihood of incarceration, the defendant does not have a right to counsel. **Smith**, 868 A.2d at 1256. Rule 122 ensures that "[n]o defendant in a summary case [may] be sentenced to imprisonment unless the defendant was represented at trial by counsel[.]" Pa.R.Crim.P. 122, comment.

Thus, in summary cases, paragraph (A)(1) [of Pa.R.Crim.P. 122] requires a pretrial determination by the issuing authority as to whether a jail sentence would be likely in the event of a finding of guilt in order to determine whether trial counsel should be appointed to represent indigent defendants. It is expected that the issuing authorities in most instances will be guided by their experience with the particular offense with which defendants are charged.

*Commonwealth v. Blackham*, 909 A.2d 315, 318 (Pa. Super. 2006) (quoting Pa.R.Crim.P. 122, comment); *see also* Pa.R.Crim.P. 454(a) (stating, in relevant part, that "[i]mmediately prior to trial in a summary case: (1) the defendant shall be advised of the charges in the citation or complaint; [and] (2) if, in the event of a conviction, there is a reasonable likelihood of a sentence of imprisonment or probation, the defendant shall be advised of the right to counsel").

A conviction for disorderly conduct graded as a summary offense carries the possibility of a sentence of incarceration. *See* 18 Pa.C.S. § 1105 (addressing the maximum sentence for a summary offense and stating that "[a] person who has been convicted of a summary offense may be sentenced to imprisonment for a term which shall be fixed by the court at not more than 90 days"). However, on the record before us, we cannot conclude that there was no likelihood of incarceration because the record does not reflect a pretrial determination that imprisonment was not likely, and therefore, we cannot conclude that the right to counsel did not attach. *See Blackham*, 909 A.2d at 318. Further, as stated above, in determining whether Appellant waived his right to counsel, the record reflects that the trial court did not address the

- 7 -

six areas set forth in **McDonough** and Pa.R.Crim.P. 121(A)(2), and the comment thereto. **See** N.T., 3/21/24, at 3-4.

Generally, we would be constrained to vacate Appellant's judgment of sentence and remand for the trial court to: hold a hearing to determine if Appellant's waiver of his right to counsel is knowing, voluntary, and intelligent pursuant to the requirements in **McDonough** and Pa.R.Crim.P. 121; determine whether to appoint counsel or permit Appellant to proceed *pro se*; and hold a new trial. **See Commonwealth v. Phillips**, 93 A.3d 847, 858 (Pa. Super. 2014) (vacating the judgment of sentence, remanding for a hearing to determine if the defendant's waiver of his right to counsel was proper, and ordering a new trial).

However, because Appellant has challenged the sufficiency of the evidence, Double Jeopardy constitutional protections would preclude a new trial in the event Appellant's challenge to the sufficiency of the evidence has merit. Accordingly, we will proceed to consider Appellant's sufficiency claim because if it is meritorious, he would be entitled to a complete discharge. **See Phillips**, 93 A.3d at 855; **see also Commonwealth v. Arthur**, 752 MDA 2022, 2023 WL 5543740, at *4 (Pa. Super. filed Aug. 29, 2023) (unpublished mem.) (concluding that although the trial court failed to comply with Pa.R.Crim.P. 454(a), "[r]ather than ceasing our review there and remanding for a new trial following the trial court's full compliance with Rule 454[(a)], we consider [the a]ppellant's challenge to the sufficiency of the evidence . . .

because if it is meritorious, it would entitle [the appellant] to the more favorable result of complete discharge" (citation omitted)).[3]

As stated, Appellant's first two issues challenge the sufficiency of the evidence. **See** Appellant's Brief at 5. Appellant argues that the evidence was insufficient to prove the elements of disorderly conduct under 18 Pa.C.S. § 5503(a)(1) beyond a reasonable doubt. **See id.** at 11-43. Appellant contends that there was no evidence of fighting, physical contact, or threatening, tumult, and/or violent behavior as required by Section 5503(a)(1). **See id.** Moreover, Appellant argues that the trial court's reliance on profanity and Section 5503(a)(3) is misplaced, because Appellant was only charged under Section 5503(a)(1). **See id.** at 23, 32. Further, Appellant contends that the evidence did not establish that Appellant used "fighting words," as there was no evidence that Appellant's words inflicted injury or incited an immediate breach of the peace. **See id.** at 30-31.

The Commonwealth argues that Appellant used fighting words. Commonwealth's Brief at 7. The Commonwealth contends that Appellant's language showed a reckless disregard for the risk of public inconvenience, annoyance, or alarm, even if Appellant's intent was to send a message to a one person rather than to cause public inconvenience, annoyance, or alarm.

_____

[3] **See** Pa.R.A.P. 126(b) (stating that an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value).

*Id.* Further, the Commonwealth asserts that Appellant was reckless and the argument could be heard a block away. *See id.* at 7-9.

When reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bertothy*, 307 A.3d 776, 780-81 (Pa. Super. 2023) (citation omitted).

Section 5503(a) states as follows:

> **(a) Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> > (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> >
> > (2) makes unreasonable noise;
> >
> > (3) uses obscene language, or makes an obscene gesture; or

- 10 -

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a).

As noted, Appellant was convicted under Section 5503(a)(1), and the *actus reus* requirement is: "engages in fighting or threatening, or in violent or tumultuous behavior[.]" 18 Pa.C.S. § 5503(a)(1).

This Court has explained:

The *mens rea* requirement of Section 5503[(a)] demands proof that a defendant by his, actions intentionally or recklessly created a risk of causing or caused a public inconvenience, annoyance, or alarm. "The specific intent requirement . . . may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the [defendant's] intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." *Commonwealth v. McConnell*, 244 A.3d 44, 51 (Pa. Super. 2020)[;] *see also* [*Commonwealth v. Fedorek*, 946 A.2d 93, 100 (Pa. 2008)] (stating, "[a]lthough Section 5503 as a whole is aimed at preventing public disturbance, it accomplishes this aim by focusing upon certain individual acts, which, if pursued with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, constitute the offense of disorderly conduct").

*Bertothy*, 307 A.3d at 783-84 (some formatting altered and some citations omitted). However:

[i]t is well-settled that the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people and it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. Rather, the specific and definite purpose of the disorderly conduct statute is to preserve the public peace.

*Id.* at 781 (some formatting altered and citations omitted).

- 11 -

Instantly, the trial court convicted Appellant of violating Section 5503(a)(1), and Appellant argues that the evidence was insufficient to sustain his conviction under that subsection. The trial court addressed Appellant's challenge to the sufficiency of the evidence as follows:

> The testimony reveals that Appellant intentionally created a risk of public inconvenience by parking the back of his car up against the front of Mr. Martinez-Molina's car, so that Appellant's bumper was decompressed. The testimony of Mr. Martinez-Molina on direct examination by the Commonwealth produced the following:
>
> > [Q] By ADA Boyer: When you said that he parked it up to yours, --
> >
> > [A] By Edgar Martinez-Molina: Uh-huh.
> >
> > [Q] By ADA Boyer: -- was the fender of each car touching?
> >
> > [A] By Edgar Martinez-Molina: It was touching. It was completely touching in the back. The back -- the front of my car and the back of his car-- he was backed up to mines [sic]. So, it literally was touching each other.
> >
> > [Q] By ADA Boyer: Is --
> >
> > [A] By Edgar Martinez-Molina: There was no -- there was no cars in front of his. There was a whole space in front of it.
>
> (N.T. 3/21/24 at p. 9)
>
> Appellant also acknowledged the way he parked his car during an inspection with Officer Morris. The exchange between Appellant and Officer Borman-Parker in relevant part is as follows:
>
> > [Q] By Appellant: Okay. Can you tell the Court the reason why you issued me a citation when I was the one who requested a citation from you?
> >
> > [A] By Officer Borman-Parker: The reason why I issued you a citation is because based on the circumstances of you creating jeopardy with purposely backing your vehicle and parking it into your neighbor's car out of spite, you created the physical and verbal arguments.

[Q] By Appellant: Okay. Do you have proof that I did that on purpose?

[A] By Officer Borman-Parker: You said -- you told me when we were on scene that you parked your car like that. You said that you drove it and that you parked it like that, so you admitted to doing that.

(N.T. 3/21/24 at p. 26)

Appellant was required to abstain from causing public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof by not parking his vehicle up against Mr. Martinez-Molina's vehicle and engaging in a loud, verbal fight. At one point, Appellant asked Officer Borman-Parker how he attempted to disturb the peace while he was standing in front of his house. Office[r] Borman-Parker said she could hear Appellant yelling at Mr. Martinez-Molina.

Evidence adduced at trial also established that [Appellant] was engaged in fighting in a potentially violent or tumultuous behavior because both Appellant and Mr. Martinez-Molina were issued citations for the same offense. Appellant did not act alone in disturbing the peace. When questioned by Appellant if he intentionally caused public unrest, Officer Borman-Parker said yes. Officer Borman-Parker testified that the noise from the fight was so loud that she could hear it from a block away over her running vehicle, police radio and siren. The evidence further establishes that when Officer Borman-Parker arrived on the scene, she had to yell at Appellant and Mr. Martinez-Molina to stop yelling and screaming. The screaming was so loud that Officer Borman-Parker could not decipher what either person was saying. On a scale of one (1) to ten (10), Officer Borman-Parker rated the level of noise a nine (9).

The Commonwealth also asked Mr. Martinez-Molina to comment on Appellant's use of obscene language in the verbal fight. Mr. Martinez-Molina testified that Appellant called him a "fa**ot" and said, "f**k you." While [A]ppellant was only charged under [Section] 5503(a)(1) - engages in fighting or threatening, or in violent or tumultuous behavior - the [c]ourt took Appellant's use of obscene language into consideration. The exchange between [the] Commonwealth and Mr. Martinez-Molina in relevant part is as follows:

[Q] By ADA Boyer: . . . So what words of vulgarity or obscenities did he yell to you as you were engaged in this argument?

[A] By Edgar Martinez-Molina: He was calling me a f*g, you know, stuff like that. You know what I mean? Just back and forth. You know, f**k you, this and that. I didn't want to curse but yeah.

[Q] By ADA Boyer: Right. I know. And how long did this last from the time that he first engaged with you to the time that the police arrived?

[A] By Edgar Martinez-Molina: Maybe five minutes, not too long.

(N.T. 3/21/24 at p. 12)

In later testimony, Appellant asked Mr. Martinez-Molina if he had any proof of his use of obscene language during the fight. Mr. Martinez-Molina said no, yet Mr. Martinez-Molina was clear about hearing Appellant use the vulgarities. It has been held that "as long as the evidence and inferences provide sufficient information to establish proof beyond a reasonable doubt, the evidence is sufficient." *Commonwealth v. Pennix*, 176 A.3d 340, 343 (Pa. Super. 2017).

The court in *Pennix* looked to the definition of "obscene" for purposes of 18 Pa.C.S. § 5503(a)(3) based on a test set forth in *Miller v. California*, 413 U.S. 15 (1973): (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. In our case, Appellant's use of "fa**ot," "f*g" and "f**k you" was patently offensive to the average person and thus constituted were obscene.

In [*Bertothy*], the [Superior] Court affirmed [the a]ppellant's disorderly conduct conviction because [the a]ppellant demonstrated a pattern of ill-will toward his neighbors when he spray-painted "FU" on several trees on his property. "FU" is generally recognized as an abbreviation for "F**k You." The evidence in that case established that [the a]ppellant consciously

disregarded a substantial and unjustifiable risk that public annoyance or alarm would result from his private use of Tannerite explosives and public display of obscene language. The case at bar is similar because Appellant used the same obscene language but in a verbal manner. Even though the crux of **_Bertothy_** looked at the use of Tannerite explosives to disturb the peace, that Court ruled the "FU" markings were admissible, relevant evidence on the question of whether [the a]ppellant had intended to annoy, alarm, or inconvenience his neighbors with the explosion at issue. **_Bertothy_**, 307 A.3d at 779.

Trial Ct. Op., 5/13/24, at 5-9 (formatting altered).

After careful review, we are constrained to disagree with the trial court's conclusion. It is axiomatic that in order to sustain a conviction under Section 5503(a)(1), the Commonwealth must prove beyond a reasonable doubt that Appellant intentionally created a risk causing public inconvenience, annoyance or alarm, or recklessly created a risk thereof, by engaging in fighting or threatening, or in violent or tumultuous behavior. **_See Bertothy_**, 307 A.3d at 783-84; 18 Pa.C.S. § 5503(a)(1).

Here, there is no evidence that Appellant engaged in fighting or threatening behavior. Indeed, the record reflects that Mr. Martinez-Molina, Officer Morris, and Officer Borman-Parker concede that there was no threatening behavior or fighting. **_See_** N.T., 3/21/24, at 15-16, 26-27, 29, 32.

Moreover, we note that:

"Tumultuous" is not defined in Section 5503 or elsewhere in the Crimes Code. Commonly, "tumultuous" is defined as "marked by tumult"; "tending or disposed to cause or incite a tumult"; or "marked by violent or overwhelming turbulence or upheaval." Merriam Webster's Collegiate Dictionary 1272 (10th ed. 1996). "Tumult" is relevantly defined as "a disorderly agitation . . . of a

crowd usu. with uproar and confusion of voices," or "a violent outburst." *Id.* at 1271-72.[fn9]

> [fn9] Words in a statute shall be construed according to their common and approved usage, unless defined by statute, or unless the words are technical words, in which case they shall be defined in accordance with their peculiar and appropriate meaning. Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S.[] § 1903(a).

*Commonwealth v. Love*, 896 A.2d 1276, 1285 (Pa. Super. 2006).

In the instant case, the record does not reflect that Appellant's actions or language were marked by violent or overwhelming turbulence or upheaval, nor that Appellant caused a disorderly agitation of a crowd with uproar and confusion of voices, or a violent outburst. *See id.* On this record, Mr. Martinez-Molina's family were attempting to calm the situation and urge Mr. Martinez-Molina to return to his own property. *See* N.T., 3/21/24, at 15, 16. Accordingly, after review of the record, we conclude that Appellant's conduct did not constitute violent or tumultuous behavior. *See id.*

Further, we cannot conclude that Appellant's language constituted "fighting words." This Court has explained that when "determining whether words constitute fighting words, the circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether the words had a direct tendency to cause acts of violence by others." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999) (citations omitted and some formatting altered). "[F]ighting words are words

that by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 946 n.3 (citations omitted).[4]

Here, the record does not support the conclusion that Appellant's profanity inflicted injury or tended to incite an immediate breach of the peace. *See* N.T., 3/21/24, at 11-12, 16; *see also Hock*, 728 A.2d at 946, n.3. Mr. Martinez-Molina characterized Appellant's language and his response as follows: "It was a whole bunch of nothing. It was something that was – he was shouting at me. I was shouting at him. I don't know." N.T., 3/21/24, at 11-12. There was no testimony that Mr. Martinez-Molina or any witness suffered any injury or that Appellant's language rose to the level of fighting words inciting a breach of the peace.

_____

[4] We note that the Commonwealth argues that "[p]recedent dictates that the use of fighting words supports a conviction for this subsection [of] disorderly conduct [Section 5503(a)(1)]." Commonwealth's Brief at 6 (formatting altered). In support of this argument, the Commonwealth cites *Commonwealth v. Lutes,* 793 A.2d 949 (Pa. Super. 2002). *See id.* However, we note that the *Lutes* decision does not state that the appellant in that case was convicted under Section 5503(a)(1). In fact, the *Lutes* decision does not specify which subsection of Section 5503 applied in that matter. Moreover, although *Lutes* states that "'Fighting words' will support a conviction for disorderly conduct[,]'" *Lutes* cites to *Mastrangelo*, to support this assertion, and the *Mastrangelo* Court addressed **only** Section 5503(a)(2) concerning unreasonable noise. *See Lutes*, 793 A.2d at 962 (citing *Commonwealth v. Mastrangelo*, 414 A.2d 54 (Pa. 1980)). Here, Appellant was not convicted for noise under Section 5503(a)(2). Further, the Commonwealth cites to *Hock*, which discusses *Mastrangelo* and the proposition that "fighting words" may amount to disorderly conduct. *See* Commonwealth's Brief at 7. Again, we note that *Mastrangelo* addressed only Section 5503(a)(2) and unreasonable noise. Additionally, the *Hock* Court concluded that the defendant saying f**k you, a**hole to a police officer did not amount to the use of fighting words. *Hock*, 728 A.2d at 946.

When the Commonwealth cross-examined Officer Borman-Parker, who was called to testify by Appellant, she did not indicate that there was any fighting. The Commonwealth noted the elements of Section 5503(a)(1) and asked Officer Borman-Parker if she intended to charge Appellant under that section, and stated: "Even though you didn't have any information that there [was] actual[] physical contact . . . no punches were thrown?" **See** N.T., 3/21/24, at 37. Officer Borman-Parker answered in the affirmative, and the Commonwealth then stated it had no further questions and both parties rested. **See id.** at 37.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was insufficient evidence to sustain Appellant's conviction under Section 5503(a)(1). **See Bertothy**, 307 A.3d at 780-81. Although there was testimony that Appellant parked his car in such a way that it touched Mr. Martinez-Molina's car, there was no evidence that this was done intentionally or recklessly or that it constituted engaging in fighting, threatening, or violent or tumultuous behavior under Section 5503(a)(1).

Further, Appellant's use of profanity and loud name calling does not constitute engaging in fighting, threatening, or violent or tumultuous behavior under Section 5503(a)(1), and Appellant's use of profanity, while offensive or annoying, does not rise to the level of fighting words. **See Hock**, 728 A.2d at 946. We reiterate that the disorderly conduct statute is not a catchall for every act that annoys or disturbs people. **See Bertothy**, 307 A.3d at 781.

To the extent that Appellant may have used the words fa\*\*ot and f\*\*k you, we cannot conclude that they are "fighting words," under the definition set forth above and there is no evidence that these words inflicted any injury to Mr. Martinez-Molina or anyone else. Further, to the extent that Appellant was loud or used obscene language, such acts could potentially fall under 18 Pa.C.S. § 5503(a)(2) or (3); however, the Commonwealth did not charge Appellant with violating either of those subsections.[5]

Because we conclude that the evidence was insufficient to convict Appellant of violating Section 5503(a)(1), we reverse Appellant's judgment of sentence and discharge Appellant. *See Commonwealth v. Bruce*, 607 A.2d 294, 297 (Pa. Super. 1992) (holding that where the evidence was insufficient to sustain the appellant's conviction, this Court was constrained to reverse the judgment of sentence and discharge the appellant). Moreover, because we reverse and discharge Appellant on sufficiency grounds, we need not address Appellant's remaining issue on appeal. *See Commonwealth v. A.R.C.*, 150 A.3d 53, 59 n.8 (Pa. Super. 2016) (reflecting that because there was insufficient evidence to sustain the appellant's conviction, discharge was

_____

[5] We reiterate that Appellant was not charged pursuant to Section 5503(a)(2), (3), or (4) involving making unreasonable noise, using obscene language, or creating a hazardous or physically offensive condition that served no legitimate purpose. *See* 18 Pa.C.S. § 5503(a)(2)-(4).

required and there was no need for this Court to address the appellant's additional arguments on appeal).[6]

Judgment of sentence reversed. Appellant discharged. Jurisdiction relinquished.

Judge Sullivan joins the memorandum.

President Judge Lazarus files a dissenting statement.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/19/2025

---

[6] However, were we to address Appellant's third issue concerning the claim that the Commonwealth was leading the witness, we would conclude that the issue was waived on appeal because Appellant failed to object to the leading questions during the trial *de novo*. ***See Commonwealth v. Spone***, 305 A.3d 602, 612-13 (Pa. Super. 2023) (explaining that the failure to make a timely and specific objection results in waiver of the claim and stating that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal" (citing Pa.R.A.P. 302(a)).